JOHN HOLLER and Wife v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 9 December, 1908).

1. **Issues Insufficient—Verdict—Judgment.**
    It is error for the trial Judge to render a judgment upon a verdict on issues submitted by him, and so framed as not to support it.

2. **Telegraph Companies — Parties — Notice — Issues Insufficient — Judgment—Relationship.**
    In a suit against a telegraph company by the wife for damages in negligently transmitting and delivering a message announcing a death, sent to the husband, upon the face of which she does not appear as a party in interest, it is necessary to a judgment for her that an issue be submitted to, and found in her favor by, the jury, as to whether she is beneficially interested therein; and a finding that the relationship between the deceased and plaintiff was that of sister, is not sufficient, as it shows no causal connection between the injury and the negligence complained of.

CLARK, C. J., dissenting, *arguendo*.

ACTION tried before *Councill, J.*, and a jury, February Term, 1908, of IREDELL.

This action was brought by John Holler and wife to recover damages for delay in delivering a telegram. It is alleged in the complaint that Mrs. Hattie Hastings died on

1 January, 1907, at 8 o'clock p. m., and J. D. Rogers, a relative, at 5 o'clock a. m., on 2 January, 1907, requested the defendant's operator at Huntersville, N. C., to send a message to John Holler and wife, who lived at Morrisville, N. C., notifying them of Mrs. Hasting's death, and paid the charges therefor. The operator was told that Mrs. Hastings was a sister of Mrs. Holler. He wrote the message for Rogers and agreed to transmit it, but it was delivered at Morrisville too late for Mrs. Holler to reach Huntersville, or the place of burial, before the funeral, by reason of which she suffered mental anguish and is entitled to recover damages therefor. The message, as written by the operator, was as follows:

"HUNTERSVILLE, N. C., 2 January, 1907.

*"To John Holler,*

"Care of Bob White, Morrisville, N. C.

"Hattie died at 8 o'clock last night.   Bury this afternoon.

"J. D. ROGERS."

The defendant admitted that it had received and transmitted the message as above set forth, but denied the other allegations of the complaint. There was evidence tending to sustain the plaintiff's allegations.

Issues were submitted to the jury, which, with the answers thereto, are as follows:

"1. Did the defendant negligently fail to transmit and deliver the telegram as alleged in the complaint?

Answer: 'Yes.'

"2. Did the sender of the telegram, Rogers, make known to the defendant at Huntersville at the time the telegram was filed for transmission the relationship existing between deceased, Hattie Hastings, and Maggie Holler?

Answer: 'Yes.'

"3. If the said telegram had been delivered without delay,

149—22

could and would the said Hattie Holler have attended the funeral of Hattie Hastings?

Answer: 'Yes.'

"4. What damage, if any, is plaintiff, Maggie Holler, entitled to recover?

Answer: '$500.00.' "

Exceptions were taken to several of the Court's rulings, but it is not necessary to state but one, which is the exception to the rendition of judgment for the plaintiff, Maggie Holler, upon the verdict.    Defendant appealed.

*II. P. Grier* and *A. L. Starr* for plaintiff.

*Armfield & Turner* and *Tillett & Guthrie* for defendant.

WALKER, J., after stating the case:  Issues must be so framed that, when answered, they will be sufficient to support the judgment.    "We are not inadvertent to the long line of decisions laying down the rule that the refusal of the Court to submit an issue tendered by either party cannot be reviewed by this Court unless exception is taken in apt time; nor do we wish to be understood as reversing or modifying it. That rule, when reasonably construed, does not conflict with the one herein laid down.    What we now say is, that section 395 of the Code is mandatory, binding equally upon the court and upon counsel; that it is the duty of the judge, either of his own motion or at the suggestion of counsel, to submit such issues as are necessary to settle the material controversies arising in the pleadings, and that, in the absence of such issues or admissions of record equivalent thereto, sufficient to reasonably justify, directly or by clear implication, the judgment rendered therein, this Court will remand the case for a new trial.    Under this rule there was error in the rendition of the judgment, and a new trial is therefore ordered." *Tucker v. Satterthwaite,* 120 N. C., 118.    That case has since been approved. *Straus v. Wilmington,* 129 N. C., 99; *Hatcher v. Dabbs,* 133 N. C., 239; *Kelly v. Traction Co.,*

*ibid.* 418. In *Falkner v. Pilcher,* 137 N. C., 449, the rule was stated thus: "It may be conceded as a general proposition that a party cannot complain because a particular issue was not submitted to the jury unless he tendered it, but the rule is subject to this qualification, that the issues submitted must in themselves be sufficient to dispose of the controversy and to enable the Court to proceed to judgment, for in that respect the duty of the Court to submit issues is mandatory."

It follows that if the issues in this case were not sufficient to warrant the judgment which was rendered, there was error for which a new trial must be awarded. The judgment was rendered in favor of the *feme* plaintiff, Maggie Holler, alone, and the verdict, in our opinion, did not authorize it. There is no finding that Mrs. Holler had any beneficial interest in the message which the law recognizes as sufficient to sustain an action for damages when there has been negligence on the part of the telegraph company in its transmission, which has caused the plaintiff mental anguish and consequent damage. In *Helms v. Telegraph Company,* 143 N. C., 386, *Justice Brown,* for the Court, says: "The right of the sendee to recover of a telegraph company for error or negligence in the transmission or delivery of a telegram is altogether denied in Great Britain. *Playford v. Tel. Co.,* L. R., 4 Q. B., 106. In this country the English doctrine does not generally prevail. Here the weight of authority holds that the sendee may recover in his own name such damage as he may have sustained by reason of negligence when the message was intended for his benefit, and it was apparent on the face of the message or the company had knowledge of it. 2 S. & R. Neg. (5 Ed.), sec. 543; Joyce Elec. Law, sec. 1008; *Frazier v. Tel. Co.,* 67 L. R. A., 320." But we think this case is in principle not unlike *Cranford v. Telegraph Co.,* 138 N. C., 162, in which we said: "There can be no recovery of damages for delay in transmission and delivery, where it does not, in any way, appear that the

plaintiff was an intended beneficiary of the message. We
could not well hold otherwise without subjecting the defend-
ant to liability for damages alleged to have been sustained by
those who are strangers to its contracts, and to whom it owed
no duty whatever. The mental anguish suffered by the *feme*
plaintiff cannot, under the facts and circumstances of this
case, be traced to any wrong committed by the defendant.
There is no causal connection between the breach of the duty
owed by the defendant to N. P. Cranford and the anguish of
his wife, which resulted from her failure to be present at the
funeral of her grandchild, and for it, therefore, the law
awards no compensation. It is not every one incidentally
suffering a loss from the negligence of another who can main-
tain an action upon that ground. It has been said that there
would be no bounds to litigation if the ill effects of the neg-
ligence of men may be followed down the chain of results to
their final attenuated effect." An analogous doctrine is laid
down in *Williams v. Telegraph Co.,* 136 N. C., 82, in which
it is said: "The principle uniformly sustained by the cases
upon the subject, some of which we have cited, is that,
unless the meaning or import of a message is either shown by
its terms or is made known by information given to the agent
receiving it in behalf of the company for transmission, no
damage can be recovered for failure to correctly transmit
and deliver it beyond the price paid for the service." We
may well add what is so well stated in *Squire v. Telegraph
Co.,* 98 Mass., 237, that "a rule of damages which should em-
brace within its scope all the consequences which might be
shown to have resulted from a failure or omission to perform
a stipulated duty or service, would be a serious hindrance to
the operations of commerce and to the transaction of the
common business of life. The effect would be to impose a
liability wholly disproportionate to the nature of the act or
service which a party has bound himself to perform, and to
the compensation paid and received therefor."

Let us apply these principles to the case in hand. The complaint alleges that the message was intended for John Holler and his wife, whereas the message, as sent, was addressed to John Holler alone, and, further, that the operator of the defendant was notified that Mrs. Hastings and Mrs. Holler were sisters. The defendant denies these allegations, except the allegation that the message was addressed to John Holler, and avers, in this connection, that the message so addressed was the only one received and transmitted by it. These allegations and denials raised issuable facts, and there is no finding that, in a legal sense, the message was sent to Mrs. Holler or for her benefit, or that she had any interest in the message which entitles her to recover damages for mental anguish, alleged to have been caused by the negligence of the defendant. The mere fact that she was related to the deceased, even though she was her sister, is not of itself sufficient to impose upon the company any legal duty or obligation to her. The nearness of the relation does not supply the missing link in the chain of causation, for the defendant cannot be said to have caused the alleged injury to her unless, by its contract, it was, in law, obliged to prevent it, or omitted to perform some legal duty to her, which omission was the proximate cause of the injury. If any person who was related to the deceased can sue for damages, even if not mentioned in the message, and without any showing that he is, in a legal sense, a beneficiary of the message, or one to whom the company owed a legal duty, a liability would be imposed "wholly disproportionate to the nature of the act or service" which the company has bound itself to perform, and the aggregate recovery might be almost unlimited; a principle which would lead to such a result cannot be sanctioned by law. Our case in this respect comes directly within the rule we approved in *Cranford v. Telegraph Co., supra.* In that case it appeared that Mrs. Cranford was related to the deceased child, being her grandmother. We held that the relationship

alone did not entitle Mrs. Cranford to sue for damages resulting from mental anguish; and we so hold in this case, that the verdict by which the jury find merely that the *feme* plaintiff was related to Mrs. Hastings, being her sister, without also finding that she was the legal beneficiary of the message, is defective and no judgment for the plaintiff can be based thereon.

The plaintiffs allege in the complaint that the defendant undertook to transmit and deliver the message addressed to John Holler, having knowledge that it was intended for the benefit of Holler and his wife, and also that Mrs. Hastings and Mrs. Holler were sisters. It is also alleged that the message which was actually delivered too late (at about one o'clock p. m.) was the one addressed to John Holler. The allegation that the defendant undertook to transmit and deliver the message, addressed to John Holler, is admitted in the answer, and the other allegations are denied. The charge of the Court upon the first issue was confined to the transmission and delivery of the message addressed to John Holler, as will appear from the following instruction:

"So on the first issue, to repeat, if you are satisfied by the greater weight of the evidence that the message, which has been offered in evidence, was delivered to the defendant's agent at Huntersville at six o'clock, or about six o'clock, in the morning, and was not transmitted and delivered to the sendee, John Holler, until 12:34, or about one o'clock, as you may find from the evidence, in the afternoon of the same day, then the Court charges you that the duration of the time which elapsed between the time when the message was delivered to John Holler, or to the person in whose care it was sent, would be unreasonable delay, and in the absence of some explanation, it would be your duty to answer the issue 'yes'; otherwise answer the issue 'no.' "

The first issue, by its very terms, relates to the transmission and delivery of the message, and not to any error in

wording it, and the pleadings and case on appeal show. that it was so understood by the parties and the Court, and by the jury, if it be necessary to consider anything but the issues themselves and the answers thereto, in order to determine what the verdict is.

It follows that there was error. The verdict must be set aside and a new trial awarded.

New trial.

CLARK, C. J., dissenting: A telegraph company, unlike the postoffice, does not transmit a paper writing. There is no statute which requires a telegram to be written. No rule or custom of the company to require it is shown in this case, and if there had been the company waived it, for it accepted the oral message, without objection. If there had been such rule, it must be shown that the sender had notice of it. *Hendricks v. Tel. Co.*, 126 N. C., 311; *Garland v. Tel. Co.*, 74 Am. St., 394. In fact, a large proportion of telegrams have always been orally delivered to the company for transmission, and this proportion of oral messages has been greatly increased by the use of the telephone by which a large number of messages are now orally delivered to the company. Whether the message is written down by the sender or the company is immaterial, for such writing is merely evidence of what the message was, which the company received for transmission. The transmission itself is not by a process decipherable by the eye, but by the ear only, and is therefore oral, as it were. 1 Joyce Elec., sec. 10. The defendant did not transmit a written message. The message in this case announced the death of *feme* plaintiff's sister and the time the burial would occur. The telegram was received by the defendant at 5:30 a. m. and was not delivered, a few miles away, till 1 p. m.

The evidence is, that Mr. Rogers went to defendant's office and directed the agent to send the message to *"John Holler and wife,"* and the operator said: *"I will write it down and send it as soon as I can get the wires."*

The jury found on the issues submitted: 1. That the defendant negligently failed to deliver the telegram alleged in the complaint.   2. That the sender made known to the operator, at the time the telegram was given in to be sent, that the deceased and John Holler's wife were sisters.   3. That if the telegram had been delivered without delay, the *feme* plaintiff, Maggie, would have attended her sister's funeral.   4. That the *feme* plaintiff was entitled to recover $500.00.

The general rule is, that messages of sickness or death need not disclose the relationship of the parties, the nature of the message being notice to the company of the necessity for prompt delivery.   2 Joyce Electricity, sec 804, and many cases cited, among them, *Lyne v. Tel. Co.,* 123 N. C., 129; *Sherrill v. Tel. Co.,* 109 N. C., 528; *Laudie v. Tel. Co.,* 124 N. C., 528; *Meadows v. Tel.,* 132 N. C., 40; *Bright v. Tel. Co.,* 132 N. C., 317; *Hunter v. Tel. Co.,* 135 N. C., 458. This Court has held that, if the company desires to know the relationship, the duty is on it to inquire. 2 Joyce Elec., sec. 805; *Bennett v. Tel. Co.,* 128 N. C., 103.   But here the jury find as a fact that the defendant was informed of the relationship, and therefore knew who was the beneficiary of the message, even if the operator had not been told to send the message to "John Holler and wife."

Having received the message, orally, without demur, and taken the sender's money for the service, the defendant was bound to execute the contract.   It was told that *feme* plaintiff was one of the sendees.   For brevity, or by negligence, it failed to put her name in the telegram.   It knew, independently, the relationship, and therefore that *feme* plaintiff was the beneficiary of the contract.   It negligently delayed 8½ hours to get a death message a distance of 16 miles, with no relay point between.   The message could have been conveyed by an ox cart in less time.

The evidence brings the case within *Cranford v. Tel. Co.,*

138 N. C., 162, for that holds that it is sufficient if there are facts and circumstances to give the defendant notice that the plaintiff was either (1) the sendee, or (2) that the message was sent for her benefit. Here there is direct evidence and finding by the jury of both facts.

The jury, having found that the company was notified that the *feme* plaintiff was sister to the deceased, knew that she was the beneficiary of the message (independently of the sender's direction to send to "John Holler and wife"), and hence *Helms v. Tel. Co.*, 143 N. C., 386, does not apply.

It is impossible to see how the sender could do more than to tell the operator to send the message to John Holler and wife, giving notice that said wife was sister to the deceased; for how could the defendant have been more negligent than here, for the operator said, "I will write it down and send it," and then was negligent both by leaving out the words "and wife" and, further, in not starting the telegram for 8½ hours, for the distance being only 16 miles with no relay point, its actual transmission must have been instantaneous. The public are entitled to better treatment than the defendant gave this plaintiff, and the law ought to see that they get it.