MICHIGAN NATIONAL BANK,

*a corporation*

*v.*

ROBERT L. MATTINGLY

*and* MARGIE MATTINGLY

(No. 12953)

Decided March 25, 1975.

*Robert E. Keltner* for appellant.

No appearance for appellees.

SPROUSE, JUSTICE:

This is an appeal by the plaintiff bank from a judgment of the Circuit Court of Pleasants County. The plaintiff brought the action to foreclose on a chattel mortgage held on a house trailer owned by the defendants, and a jury awarded it $609.02. The plaintiff demanded possession of the house trailer and a judgment for the deficiency due under a contract and promissory note executed by the defendants. It claimed $2,932.50 was owed on the contract and note. The defendants contended they owed a lesser amount because the contract and note were usurious under the laws of West Virginia.

The defendants purchased a house trailer from McDonald's Trailer Sales, Inc. in Belpre, Ohio in December, 1961. They executed three documents in connection with the sale: A negotiable promissory note in the face amount of $8,958.60, a retail installment contract, and a "Customer's Statement". This action was brought upon the retail installment contract and the negotiable note.

The retail installment contract indicated a cash price of $8,700 and a downpayment, representing a trade-in allowance on another trailer of $2,906.75, leaving an un-

paid cash price balance of $5,703.25. The instrument reflects the addition of $515.49, representing insurance costs, making a "principal balance owed and payable in installments" of $6,308.74. The finance charge, listed as $2,649.86, was added to achieve a "time balance" of $8,958.60. Under the designation of finance charge, in parentheses, were the words "time price differential". The evidence in the case reflected that the "finance charge" or "time price differential" was actually a six percent "add-on" interest charge which was equivalent to 11 1/2 percent simple interest. The next item on the retail installment contract was the payment schedule reflecting eighty-four monthly payments of $119.06. The final figure on the contract was a "time sales price" shown as $11,865.35. There is no explanation of the "time sales price" in either of the three instruments. Testimony indicated that this figure was added after the defendants signed the contract.

There is a discrepancy between the "time balance" of $8,958.60 and the payment schedule. The schedule of eighty-four payments of $119.06 totals $10,001.14. Apparently, the insurance figure of $515.49 covered only a two-year period, and an additional five-year coverage was necessary. The cost of the additional five-year coverage was, therefore, added to the monthly installment price. The testimony developed at trial does not explain the discrepancies between the three instruments, but from an inadequate record and an inadequate brief, we think the fairest inference that can be made is that the defendants owed to the appellant the approximate sum of $2,900, unless usury was a valid defense.

The issues presented on this appeal are: (1) Whether the trial court correctly applied the law of West Virginia rather then the law of Ohio in determining the proper rate of interest; (2) whether the parol evidence and the best evidence rule were violated in permitting testimony concerning the proper forum; (3) whether the defendant as a "holder in due course" of a negotiable instrument should have been exempt from the defense of usury; (4)

whether the "time price" exception to a usurious contract should have governed the verdict in this case; and (5) whether the trial court committed error by not directing the jury to find specially if the transaction were usurious and to compute the amount of the verdict accordingly.

The plaintiff contends that the law of Ohio governs the transaction as a matter of law and that this question should not have been submitted to the jury. The applicable rule is clear. The law of the state in which it was made and to be performed governs a contract's construction when it is involved in litigation in the courts of this State. *State v. Hall*, 91 W. Va. 648, 114 S.E. 250. See also *Gooding v. Ott*, 77 W. Va. 487, 87 S.E. 862.

The contract does not reflect where it was executed nor does the intention of the parties appear from the instruments involved. It is uncontroverted that the McDonald agent twice visited the defendants in West Union, West Virginia, and that the trailer was subsequently delivered there to the defendants. In the interim, the defendants visited the McDonald Trailer Sales location in Ohio to select the trailer. The note executed by the defendants reflects that it was signed in the State of Ohio, but no place of execution is noted either on the retail installment contract or on the "Customer's Statement". Both defendants testified, however, that they were signed at their West Virginia residence. McDonald, a witness for the appellant, testified that the three documents were signed at the Belpre, Ohio location.

It is, of course, conclusively presumed that the writing contained the entire agreement between the parties and any parol evidence of prior or contemporaneous conversations or declaration tending to substitute a new and different contract for the one evidenced by the writing is incompetent. 30 Am. Jur. 2d, *Evidence*, Section 1016, page 149. See *Petty v. United Fuel Gas Co.*, 76 W. Va. 268, 85 S.E. 523.

However, since the place at which an instrument was executed is not an essential part of the writing, "parol evidence is admissible to show that the instrument was executed at a place different from the one at which it purports to have been executed." 32A C.J.S., *Evidence*, Section 996, page 508. Similarly, the best evidence rule is aimed only at excluding evidence which concerns the contents of a writing. Testimony as to facts about the place of execution may be admissible. See 29 Am. Jur. 2d, *Evidence*, Section 449, pages 510–511. The conflict of laws question in this case evolved into a factual issue. The court properly allowed oral testimony concerning the place of execution and the jury found the contract was executed in West Virginia. There was no legal error in this determination.

The appellant next asserts that it is a "holder in due course" of a negotiable promissory note executed by the defendants, and that the defense of usury is not available for this reason. There is no merit in this contention.

Code, 1931, 47-6-6, as amended, effective September 14, 1968, limits the liability of a holder in due course in respect to one who has been damaged by usury. See *Carper v. Kanawha Banking & Trust Company*, ____ W. Va. ____, 207 S.E.2d 897. At the time of the transaction involved in this case (1961), however, usury was a defense in this State even against a holder in due course of a negotiable instrument. *Hall v. Mortgage Security Corporation of America*, 119 W. Va. 140, 192 S.E. 145 and *Artrip v. Peters*, 114 W. Va. 819, 174 S.E. 524.

Plaintiff contends on appeal that the "time price" exception to usurious contracts should defeat the usury defense. It is true this doctrine is still recognized in this jurisdiction. In *Carper* we said:

"An exception to the application of the usury laws may be found in the 'time-price' doctrine: in a commercial transaction involving the sale of property by credit arrangement, if the negotia-

tion between the seller and the buyer involves a *bona fide* quotation of both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon." Point 2 Syllabus, *Carper v. Kanawha Banking & Trust Company, supra.*

*Carper* also made it clear that a jury may consider a broad range of facts in determining the existence of a "time price" contract.

This issue, however, was not properly developed at trial by the plaintiff. Except for a vague and confusing reference in the plaintiff's motion to set aside the judgment, the record is devoid of any mention of reliance by the plaintiff upon this exception to the usury laws. No instructions on this point of law were even tendered to the court by the plaintiff's counsel. In the motion to set aside the judgment, the plaintiff stated: "That in West Virginia there is no statutory provision relating to a time price difference on a retail sale and the Court instructed the jury to the contrary in giving Defendant's Instruction No. 1." That dealt merely with the statutory interest rates applicable to the contract. The plaintiff did not object to the instruction on that ground, and it was substantively similar to one of plaintiff's instructions. It is obvious that the trial court had no opportunity to rule upon the applicability of the "time price" doctrine. As we have stated repeatedly, this Court will not consider nonjurisdictional questions not acted upon by the trial court. *Western Auto Supply Company v. Dillard,* 153 W. Va. 678, 172 S.E.2d 388.

The plaintiff contends lastly that the trial court committed reversible error in not directing the jury to make the findings required by Code, 1931, 47-6-7. This section contains procedural provisions for trying usury issues. While some of its provisions may have been repealed by implication with the amendment of Code, 47-6-6 in 1968, it applies fully to this case. It provides that where usury

is asserted as a defense that "the court shall direct" the jury to ascertain:

> "* * * (a) Whether or not the contract, assurance or other writing is usurious; (b) if usurious, to what extent; (c) whether or not interest has been paid on such contract, assurance or other writing, above the legal rate, and if so, to what extent; (d) if a verdict be found for the defendant upon the plea of usury, a judgment shall be rendered for the plaintiff for the principal sum due, with interest at the legal rate, and, if any interest has been paid above the legal rate, the excess over and above that rate, shall be entered as a credit on the sum due; * * *."

At the conclusion of the evidence, the court gave the jury no specific instructions concerning its verdict, and it returned the following:

> "We the Jury find that the contract sued upon was signed in the State of West Virginia, and we also find in favor of the Plaintiff, Michigan National Bank, a corporation, and against the Defendants, Robert L. Mattingly and Margie Mattingly in the amount of $609.02."

Plaintiff's counsel made the following objection before the dismissal of the jury: "Note our objection to the form of the verdict as being improper, * * *." The court excused the jury and plaintiff's counsel made a motion to set aside the verdict stating: "The verdict is not as required under our statute. When there is a question of usury as I understand the statute, there must be a specific finding relative to the question of usury before the jury can reach a verdict in that amount * * *." The court summarily overruled the motion.

The granting or refusing of a request for special jury findings is generally in the sound discretion of the court, but the language of some statutes has been held to place a mandatory duty upon the court to grant a request for such special findings. 76 Am. Jur. 2d, *Trial*, Sections 1177 and 1180, pages 140 and 143. See also *Baltimore & O. R. Co. v. Cain*, 81 Md. 87, 31 Atl. 801; *Moyers v. Chicago & Eastern Illinois Railroad Co.*, 43 Ill. App. 2d

316, 193 N.E.2d 604; *Aetna Casualty & Surety Co. v. Niemiec*, 172 Ohio St. 53, 173 N.E.2d 118; *Holler v. Western Union Telegraph Co.*, 149 N.C. 336, 63 S.E. 92; *Gatzow v. Buening*, 106 Wis. 1, 81 N.W. 1003. The language of some of these cases indicates a court may have a duty in some instances to instruct the jury concerning special findings even in the absence of a request from counsel. See, for example, *Holler v. Western Union Telegraph Co.*, *supra* at 338, 63 S.E. at 93, where the court said:

> "* * * [W]e now say * * * that section 395 of the Code is mandatory, binding equally upon the court and upon counsel; that it is the duty of the judge, either on his own motion or at the suggestion of counsel, to submit such issues * * *."

In *Gatzow v. Buening*, *supra* at 16, 81 N.W. at 1008, the court stated:

> "The statute, in mandatory language, clearly imposes on the trial court the duty of preparing the form for the special verdict where one is seasonably requested. * * * It will hardly do to shift that duty onto counsel for the moving party and then deny his motion because the duty is not performed before arguments to the jury commence. The plain letter of the statute was violated. The only legitimate purpose of suggestions from counsel, as to what particular questions shall be submitted for a special verdict, is to direct the attention of the court to the issuable facts upon which the controversy depends."

It appears that Code, 46-6-7 places such a duty on the court unless waived in some manner by the affected party. Plaintiff's counsel did not request direction to the jury by an offered instruction and the jury was given no instruction concerning damages. It is conceivable that a party could waive a breach of such duty by not objecting to instructions which are contrary to the intent of the statute. Counsel, however, timely and specifically objected to the form of the verdict while the jury was yet

empaneled. The court could have then corrected its error by having the jury reconsider the salient elements and compute the verdict accordingly. The plaintiff obviously did not waive its right to have the jury directed as contemplated by the statute. Failing to have done so, the court committed reversible error.

The judgment of the Circuit Court of Pleasants County is, therefore, reversed; the verdict is set aside; and the plaintiff is awarded a new trial.

*Judgment reversed;*
*verdict set aside; new*
*trial awarded.*