**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1517**

ROBERT E. GRAHAM,

                    Plaintiff – Appellant,

        v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

                    Defendant – Appellee.

Appeal from the United States District Court for the Southern
District of West Virginia, at Bluefield.  David A. Faber, Senior
District Judge.  (1:10-cv-00453)

Argued:  December 10, 2013              Decided:  February 3, 2014

Before KING, GREGORY, and FLOYD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

**ARGUED**: Michael W. Carey, CAREY, SCOTT, DOUGLAS & KESSLER, PLLC,
Charleston, West Virginia, for Appellant.   Don C.A. Parker,
SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for
Appellee.   **ON BRIEF**: John A. Kessler, David R. Pogue, CAREY,
SCOTT, DOUGLAS & KESSLER, PLLC, Charleston, West Virginia, for
Appellant.   Glen A. Murphy, SPILMAN THOMAS & BATTLE, PLLC,
Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal presents two questions of West Virginia law pertaining to the enforcement of insurance contracts. The first is whether an insured may recover damages for aggravation and inconvenience where his insurer, in breach of the policy, has refused to defend him from potential liability arising from a lawsuit. The resultant need of the insured to obtain alternative representation leads to the second question: whether prejudgment interest should accrue on the attorney fees thereby incurred, for which the insurer is subsequently adjudged responsible.

The district court answered both questions in the negative, pursuant to which it entered judgment for the plaintiff, Robert E. Graham, against the defendant, National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, for the reduced sum of $278,273.56. Three-quarters of the judgment was awarded to reimburse Graham for his attorney fees in connection with the precursor liability action, with the balance intended to compensate him for the fees earned by counsel in the litigation below to enforce the policy. The court entered its judgment on remand from our prior decision on the merits, see Graham v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, 474 F. App'x 956 (4th Cir. 2012) (unpublished), in which we

2

rejected National Union's defenses to Graham's allegations of breach.

In the aftermath of our remand, National Union sought a specific demand from Graham as a catalyst for negotiations and possible settlement. By letter from his counsel dated September 20, 2012, Graham asserted entitlement to the aforementioned attorney fees, plus $160,083.57 in prejudgment interest on that portion of the fee award associated with the threshold liability proceedings. He also demanded $368,788.74 for aggravation and inconvenience. Though National Union acceded to the proposed award of attorney fees, the parties could not otherwise agree on the proper amount due Graham. The issue thereafter arose on cross-motions for summary judgment, and, by its Memorandum Opinion and Order of March 7, 2013, the district court ruled in National Union's favor on the disputed items of damages. See Graham v. Nat'l Union Ins. Co. of Pittsburgh, Pa., No. 1:10-cv-00453 (S.D. W. Va. Mar. 7, 2013) (the "Opinion").[1] On March 14, 2013, the court entered the conforming judgment described above. Graham timely noted this appeal on March 29, 2013.

We conclude that, the district court correctly denied Graham prejudgment interest on his attorney fees. We therefore

---

[1] The Opinion is found at J.A. 210-30. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to this appeal.)

3

affirm that aspect of the court's judgment. The court erred, however, in denying Graham the opportunity to prove damages for aggravation and inconvenience. We thus vacate that aspect of the court's judgment and again remand for further proceedings.

I.

Graham was the Executive Director of two West Virginia nonprofit corporations that used state and federal funds to provide services to senior citizens. In 2004, the State of West Virginia sued Graham and his employers in the Circuit Court of Kanawha County, maintaining that Graham had manipulated the members of each corporation's Board of Directors to pay himself exorbitant salaries and benefits. That alleged malfeasance, according to the State, entitled it to a writ of quo warranto ordering Graham's removal and the disgorgement of his ill-gotten gains.[2]

One of the corporations, Council on Aging, Inc., was designated a "municipality" and named as an additional insured

---

[2] At common law, the writ of quo warranto (and the attendant extraordinary proceeding) is "designed to test whether a person exercising power is legally entitled to do so." Black's Law Dictionary 1256 (6th ed. 1990). In West Virginia, "[a] writ of quo warranto may be awarded and prosecuted in the name of the State" against, inter alios, "a corporation for a misuse or nonuse of its corporate privileges and franchises, or for the exercise of a privilege or franchise not conferred upon it by law." W. Va. Code § 53-2-1.

4

on a policy issued by National Union to the State. For an annual premium just in excess of $20,000, the policy purported to afford, among other things, general comprehensive liability coverage. Under the terms of the policy, that coverage extended to "[a]ny elected or appointed official, executive officer, commissioner, director, or member of the 'Named Insured' while acting within the scope of his duties as such." Dist. Ct. ECF 13-5, at 6.

Council on Aging notified National Union's claims agent of the State litigation, but the insurer denied coverage and refused to tender a defense. Graham thus defended himself against the lawsuit at his own expense. The action persisted until 2009, when the circuit court dismissed it as moot. The dismissal came after the boards of both corporations voted to remove Graham and prohibit his future involvement in their affairs, in connection with which Graham and the corporations executed a mutual release of liability.

Victory at last in hand, Graham filed the underlying Complaint on March 3, 2010, in the Circuit Court of Mercer County, alleging that National Union had breached its duty under the insurance contract to provide him with a defense to the State action. National Union removed the matter to the Southern District of West Virginia, where, on February 17, 2011, the insurer was granted summary judgment after the district court

determined that certain policy exclusions supported the denial of coverage. Our reversal of that judgment engendered the proceedings on remand, which in turn led to the second appeal now before us. The parties being citizens of different states and the amount in controversy exceeding $75,000, jurisdiction existed in the district court pursuant to 28 U.S.C. § 1332(a)(1). We possess appellate final order jurisdiction as prescribed by 28 U.S.C. § 1291.

## II.

The facts of record in this diversity proceeding are not in dispute, with the result that the issues on appeal are confined strictly to the proper interpretation of West Virginia law. As such, our review of the final judgment below is de novo. See Mort Ranta v. Gorman, 721 F.3d 241, 250 (4th Cir. 2013).

## III.

### A.

#### 1.

The body of law developing the remedies afforded West Virginia insureds for an insurer's breach of contract traces its origin to Aetna Casualty & Surety Co. v. Pitrolo, 342 S.E.2d 156 (W. Va. 1986). In that case, Aetna filed a declaratory judgment action to determine whether it was obliged to defend its

6

insured, Pitrolo, who had been sued in three separate proceedings stemming from an automobile accident. Aetna denied coverage, compelling Pitrolo to retain a private attorney to represent him. After a jury found coverage to exist under the policy, the circuit court ordered Aetna to take over Pitrolo's defense in the underlying matters and reimburse him for his attorney fees.

On review of the circuit court's order, the Supreme Court of Appeals of West Virginia (the "Court") determined that Aetna was liable not only for the attorney fees relating to the three negligence proceedings, but also for the fees Pitrolo incurred in the declaratory judgment action. In so ruling, the Court deemed it irrelevant that Aetna had, perhaps, reasonably denied coverage and had otherwise acted in good faith: "After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof." Pitrolo, 342 S.E.2d at 161 (citation and internal quotation marks omitted).[3]

Aetna was not, as it happens, adjudged liable for Pitrolo's aggravation and inconvenience, a circumstance seized upon by

---

[3] Notwithstanding the admonition in Pitrolo that the insurer's intent is typically not at issue, the category of common-law actions alleging the wrongful denial of coverage is, with some frequency, referred to in the legal vernacular as "bad faith" insurance litigation.

National Union in support of its position that the district court here correctly denied those damages to Graham. We do not ascribe great significance to this aspect of the result in Pitrolo, undiscussed by the Court. Given the nascency of the cause of action recognized in that case, we suppose it most likely that the insured simply failed to make an appropriate demand.

About nine months after Pitrolo, the Court confronted a similar, but more inclusive claim in Hayseeds, Inc. v. State Farm Fire & Casualty, 352 S.E.2d 73 (W. Va. 1986). At issue in Hayseeds was whether the insurer of a restaurant business was required to relinquish the policy proceeds after the establishment was burnt down by an arsonist. The insurer, State Farm, refused to pay, maintaining that the husband-and-wife principals were responsible for the fire. The business sued, and it obtained a jury verdict for the $150,000 proceeds, plus $69,000 in attorney fees and other consequential damages, together with a punitive damages award of $50,000.[4]

---

[4] In West Virginia, two categories of compensatory damages may be recovered by the plaintiff in a breach-of-contract lawsuit. "Direct" damages are "those directly flowing from the contract breach." Desco Corp. v. Harry W. Trushel Const. Co., 413 S.E.2d 85, 89 (W. Va. 1991). Damages categorized as direct are distinguishable from "indirect or consequential damages that arise from the special circumstances of the contract." Id. In a bad-faith action alleging an insurer's nonperformance under a liability policy, such as Pitrolo, the plaintiff sustains direct
(Continued)

8

Adhering to its analysis in Pitrolo, the Court held that "whenever a policyholder must sue his own insurance company over any property damage claims, and the policy holder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorneys' fees."  Hayseeds, 352 S.E.2d at 80.  The fee recovery compensates the insured for "net economic loss caused by the delays in settlement," that is, as a foreseeable consequence of the breach.  Id.  The insured is also entitled to additional consequential damages in the form of "an award for aggravation and inconvenience."  Id.  The Court thus affirmed the trial court's judgment, except that it reversed the

---

damages as the result of being compelled to retain substitute counsel to represent him in the proceedings with respect to which the insurer has abrogated its duty to defend.  By contrast, the attorney fees incurred by the plaintiff in litigation with the insurer to enforce the policy are properly classified as consequential damages, insofar as "at the time of the contract the parties could reasonably have anticipated that [such fees] would be a probable result of the breach."  Desco Corp., 413 S.E.2d at 89; see United States v. Arvanitis, 902 F.2d 489, 497 (7th Cir. 1990) (payments to counsel by insurer investigating defendant's fraudulent scheme not recoverable under statute disallowing restitution for consequential damages such as "legal fees generated in prosecuting a claim").  The attorney fee award in Pitrolo comprised both categories of damages.  Hayseeds, however, did not involve a liability policy and its attendant predicate litigation, with the result that the attorney fees awarded by the jury in that case were incurred exclusively in enforcement of the policy, and thus wholly within the category of consequential damages.

9

punitive damages award as unsupported by a sufficient showing of actual malice. See id. at 80-81.

Hence, whether an action on the policy is instituted by the insurer (Pitrolo) or by the insured (Hayseeds), it is settled that whenever a breach is proved of the insurer's duty to indemnify (Hayseeds) or broader duty to defend (Pitrolo), the insured may recover direct damages for attorney fees expended in any predicate proceeding (usually an adjudication of the insured's liability to a third party), and also consequential damages for fees incurred to enforce the policy against the insurer. The first question in this appeal is whether Graham may pursue additional consequential damages for aggravation and inconvenience, like the insured in Hayseeds, notwithstanding that the facts of his case are — at least superficially — more analogous to those in Pitrolo.[5]

From the insured's perspective, he is bound to suffer the same aggravation and inconvenience regardless of how the insurer breaches the policy: either by unjustifiably refusing to provide a defense against liability or by wrongfully withholding

_____

[5] As in Pitrolo, the litigation before the district court sought to resolve an insurer's duty to defend its insured from liability. The only notable difference — albeit a legally immaterial one — is that the case at bar was filed by the insured, while Pitrolo was a declaratory judgment action initiated by the insurer.

10

indemnification from property loss. And there is no logical reason to authorize an award for one item of consequential damages — attorney fees in the enforcement litigation — while simultaneously denying recovery for aggravation and inconvenience, which are merely other items in the same category. We therefore conclude that, in West Virginia, insureds in Graham's position may be compensated for aggravation and inconvenience (subject to adequate proof thereof), insofar as those items of consequential damages are permitted generally.

2.

The district court reached the contrary result by distinguishing between liability policies — implicating both the duty to defend and the duty to indemnify — and those simply providing indemnification from loss. The court denominated the former type (at issue here and in Pitrolo) "third-party insurance," Opinion 13, and the latter type (discussed in Hayseeds) "first-party insurance," id. at 13. Justice Benjamin made the same distinction, espousing the minority viewpoint in Loudin v. National Liability & Fire Insurance Co.: "First-party insurance is a contract between the insurer and the insured to protect the insured from its own actual losses and expenses . . . . Third-party insurance is a contract to protect the insured from losses resulting from actual or potential liability to a third party." 716 S.E.2d 696, 707 (W. Va. 2011) (Benjamin,

11

J., dissenting) (quoting Couch on Insurance 3d § 198:3 (2005) (internal quotation marks omitted)).[6]

Loudin is not particularly useful to our analysis, however, because the issue in that case was a broad one, namely, whether the plaintiffs had a sufficient contractual (first-party) relationship with the insurer such that a bad-faith action could be maintained to begin with. See Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 897 (W. Va. 1998) ("[T]he common law duty of good faith and fair dealing . . . runs between insurers and insureds and is based on the existence of a contractual relationship. [T]here is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants.").

Here, by contrast, Graham is an acknowledged insured in privity with National Union under the latter's liability policy; he is no stranger to the contract. Moreover, the question presented is considerably more narrow than in Loudin, i.e., whether Graham is entitled to the full array of consequential damages ordinarily available to the insured in a breach-of-contract proceeding. The answer is "yes," and it depends naught

---

[6] See also Marshall v. Saseen, 450 S.E.2d 791, 797 (W. Va. 1994) ("First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits.").

on the characterization of the insurance as first-party or third-party. Rather, consequential damages are part and parcel of the remedies obtainable in a bad-faith action against an insurer, which, as set forth in the above-cited passage from Elmore, can only be initiated and maintained by an insured, that is, a first-party claimant.

Indeed, the Loudin majority framed the primary issue before it as "whether the circuit court properly categorized the [plaintiffs] as third-party claimants." 716 S.E.2d at 700. The Court in Loudin was asked to determine the insurer's duties under a liability policy on a pickup truck. The truck had been backed over the insured by his brother, who was operating it with permission. Although the insured was, in a manner akin to the typical third-party claimant, seeking recompense for the negligent operation of the covered vehicle, the Court ruled that he was nonetheless a first-party claimant with standing to sue his insurer for withholding coverage. See id. at 703 ("[W]e now hold that, when a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim.").

Neither Loudin, nor Pitrolo, nor any other West Virginia authority poses an impediment to the consequential damages

13

Graham seeks. Such damages are dependent only on proof thereof by a preponderance of the evidence. Remand shall afford Graham the opportunity to develop and present his evidence of aggravation and inconvenience in connection with the breach already established.

B.

West Virginia law authorizes an award of prejudgment interest for "special or liquidated damages" from the date of their accrual. See W. Va. Code § 56-6-31(a). Special damages are direct in character and "include[] lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures." Id. If an item of damages is adjudged within the statute, prejudgment interest is mandatory. See Grove v. Myers, 382 S.E.2d 536, 540 (W. Va. 1989). Graham maintains that the attorney fees he incurred in defending against the State lawsuit are similar enough to medical expenses to be subject to prejudgment interest.

In State ex rel. Chafin v. Mingo County Commission, 434 S.E.2d 40 (W. Va. 1993), the Court affirmed the denial of prejudgment interest on a county official's legal defense expenses deemed reimbursable from the public fisc. In so ruling, the Court observed that "[w]e are not convinced that the lower court erred in determining that the [attorney fees] did not constitute 'similar out-of-pocket expenditures' and

14

therefore did not qualify as an award entitling the [official] to prejudgment interest." Id. at 44.

Thereafter, in Miller v. Fluharty, 500 S.E.2d 310 (W. Va. 1997), a bad-faith action to enforce an indemnification policy, the Court reversed an award of prejudgment interest on litigation fees and expenses. The most compelling basis for the Court's holding was its observation that attorney fees, particularly those earned on a contingency basis, are "unliquidated and unsettled until the circuit court issues its ruling. Only after the circuit court approves the policyholder's attorney's fee does the amount become liquidated and established." Id. at 325. At that point, of course, post-judgment interest will begin to accrue. The Miller Court also noted that, because the insured is not typically liable for the contingent fees until after the verdict or settlement is paid by the insurer, such expenses are not "out-of-pocket" as set forth in the statute. See id. at 325-26.

Graham correctly notes that both of the pertinent West Virginia authorities are factually distinguishable from his case, in that Chafin was not an insurance case and Miller involved only attorney fees incurred in litigation with the insurer. Graham has excluded that portion of his attorney fees, properly classified as consequential — not direct — damages, from his prejudgment interest claim. Further, as Graham

15

emphasizes, he agreed to pay counsel in the State lawsuit by the hour, and not on a contingency basis, a circumstance not present in Miller and one that arguably undercuts much of the rationale supporting that decision.

There being no requirement that the circuit court approve any aspect of Graham's private fee arrangement with his attorneys in the State lawsuit, it is apparent that Graham became liable for those hourly fees as they were incurred, up to the entry of judgment. Nevertheless, the claim remained unliquidated beyond the entry of judgment until, on remand following the first appeal in this enforcement action, National Union stipulated to the precise amount due. We conclude that, in accordance with Miller, the absence of liquidation is enough to exclude attorney fees — even those sustained as direct damages — from the reach of the West Virginia prejudgment interest statute.


IV.

Pursuant to the foregoing, the judgment on appeal is affirmed insofar as the court below declined to award prejudgment interest on Graham's attorney fees. The judgment is vacated, however, to the extent that Graham was denied the opportunity to prove consequential damages in the form of aggravation and inconvenience attributable to National Union's

16

breach of the insurance contract.  We remand the matter to the district court for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>