# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Harsco Corporation,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0695** (Wood County 11-C-425)

**CSX Transportation, Inc.,**
**Defendant Below, Respondent**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Harsco Corporation, by counsel James S. Crockett, Jr., and Rebecca D. Stevenson, appeals the Circuit Court of Wood County's January 29, 2015, order denying petitioner's motion for summary judgment; the November 5, 2015, order awarding respondent attorney's fees and expenses on its claim for indemnity against petitioner; and the June 21, 2016, final judgment order. Respondent CSX Transportation, Inc., by counsel Marc E. Williams, Melissa Foster Bird, and Megan Basham Davis, filed a response in support of the circuit court's order. Petitioner filed a reply. Petitioner argues that the circuit court erred in denying petitioner's motion for summary judgment and in its award of pre-judgment interest and attorney's fees to respondent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, we find that the circuit court did not err with respect to its denial of petitioner's motion for summary judgment or its award of pre-judgment interest and attorney's fees to respondent. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(d) of the Rules of Appellate Procedure.

The parties herein are successors in interest to an August 1, 1987, private road crossing agreement ("Crossing Agreement") governing the use of a railroad crossing near the American Electric Power ("AEP") coal-fired power plant in Relief, Ohio. In 1987, petitioner's predecessor submitted the winning bid to AEP for removal of materials from a cooling pond, near the AEP plant, and transport of these materials to another location for cleaning and processing. The parties agree that their claims sub judice arise from the interpretation of the duties and responsibilities of the parties with respect to maintenance of the railroad crossing following a February 1, 2009, train derailment.

The Crossing Agreement between the parties herein contained the following relevant provisions:

4.1     Crossing (including the necessary appurtenances, approaches, roadway, curbs, gutters, shoulders, slopes, fills and cuts and drainage thereof) shall be constructed and maintained at the sole cost and expense of Licensee.

4.2     Because of Railroad's labor agreements, all construction and maintenance[1] work to be performed on that portion of said Crossing[2] between the rails of said track(s) and for two feet (2') on the outside of each rail thereof, and all work on Railroad's signal and communication facilities deemed necessary by Railroad to permit Licensee's use of Crossing, must be performed by Railroad, at the sole cost and expense of Licensee.

4.5     Licensee, at its sole cost and expense, shall maintain all approachways, and shall keep the Crossing at all times free and clear of all spilled materials, ice, snow, mud, debris and all other obstructions (including parked vehicles) to satisfaction of the Railroad.

14.2    Licensee . . . assumes all liability for, and releases and agrees to defend, indemnify, protect and save Railroad harmless for and against:

> (B)     all loss and damage on account of injury to or death of any and all person (including but not limited to employees, invitees and patrons of the parties hereto) on the Crossing or adjacent thereto . . .

From the time it secured its predecessor's interest in 1999, until the 2009 derailment, petitioner performed no direct maintenance or cleaning on the portion of the crossing between the rails of the tracks and for two feet on the outside of each rail. In the early morning hours of February 1, 2009, a locomotive pulling a CSX train derailed on the crossing at issue. The derailment allegedly occurred due to the accumulation of snowfall on the crossing and the

---

[1]Section 1.6 of the Crossing Agreement provided that ""Maintenance" shall include keeping all vegetation within the area(s) outlined in red on attached print and identified thereon as "sight clearance area(s)" cut to a height not exceeding two feet (2') above ground level, and keeping said "sight clearance area(s)" free of parked vehicles and other obstructions."

[2] Section 1.4 of the Crossing Agreement provided that the "term "Crossing", as used herein
includes track crossings, approaches, roadways, drainage facilities, warning devices, signal and wire lines, gates, barricades, signs, appliances and ancillary facilities.

surrounding area. As a result of the derailment, CSX train conductor Allen Waybright was injured. Respondent cleaned up the area following the derailment and put the locomotive back on the tracks without contacting petitioner.

On September 21, 2011, Mr. Waybright filed a lawsuit against petitioner, in the Circuit Court of Wood County, for his injuries allegedly related to the February 1, 2009, derailment. In his complaint, Mr. Waybright alleged that the condition of the crossing caused the derailment and, consequently, his injuries. Thereafter, on November 17, 2011, respondent's counsel wrote to petitioner's counsel requesting that petitioner, pursuant to the Crossing Agreement; accept the defense of respondent with respect to claims brought by Mr. Waybright relating to the February 1, 2009, derailment. Petitioner refused the tender of defense and argued that maintenance of the portion of the crossing where the derailment occurred was not petitioner's responsibility under section 4.2 of the Crossing Agreement. Consequently, respondent filed a third-party action against petitioner in the Waybright case. Respondent settled the claims of Mr. Waybright on May 5, 2013, for $200,000.

The parties filed corresponding motions for summary judgment. In its motion for summary judgment petitioner advanced three arguments. First, petitioner alleged that it was entitled to summary judgment due to the application of an Ohio anti-indemnity statute, Ohio R.C. § 2305.31. Second, petitioner argued that the area where the derailment occurred was not part of the crossing and, thus, not its responsibility to maintain. Third, petitioner alleged that respondent's own fault defeated its implied indemnity claim. At an October 15, 2013, pre-trial conference hearing, the circuit court discussed the outstanding motions and requested additional briefing by the parties. In response, petitioner filed a supplemental motion for summary judgment and argued that the parties' agreement was clear and unambiguous. Petitioner argued that maintenance for the portion of the crossing where the derailment occurred was subject to respondent's labor union agreement, as noted in paragraph 4.2 of the Crossing Agreement. Specifically, petitioner alleged that the labor union language in paragraph 4.2 of the agreement created a specific and explicit exception to the maintenance obligations that the Crossing Agreement otherwise placed upon petitioner. Respondent opposed the motion and argued that the word maintenance in the Crossing Agreement did not include cleaning of the tracks, which was the responsibility of petitioner.

By order dated January 29, 2015, the circuit court denied petitioner's motion and found that genuine issues of material fact existed as to whether the derailment occurred at the crossing, and how the word "maintenance" was defined in the parties' agreement and through application. Three days prior to trial, the circuit court advised the parties, by letter, of the court's intent to discuss paragraph 4.5 of the Crossing Agreement and whether it imposed an obligation upon petitioner, in light of the restrictions in paragraph 4.2 of the Crossing Agreement. On the first day of trial, prior to jury selection, the court, after hearing the additional arguments of counsel, ruled that paragraph 4.5 of the Crossing Agreement specifically obligated petitioner to maintain all approachways and keep the crossing at issue free and clear at all times, regardless of the less specific language of paragraph 4.2 of the Crossing Agreement.

The trial of the case commenced. At the conclusion of trial, the jury found that respondent proved by a preponderance of the evidence that petitioner failed to keep the crossing at issue free and clear of all spilled materials, ice, snow, mud, debris and all obstruction to

3

satisfaction of respondent. Further, the jury found that the derailment was proximately caused by petitioner's failure to keep the crossing free and clear. The jury awarded respondent $124,493.03 in damages, representing respondent's out-of-pocket losses resulting from the accident apart from the settlement with Waybright and respondent's attorney's fees incurred in defending the Waybright claim.

Following the conclusion of trial, the parties submitted briefing to the trial court on the issue of whether respondent could recover its attorney's fees and expenses in an indemnity claim against petitioner, separate from recovery of the fees respondent incurred in enforcing petitioner's duties under the Crossing Agreement. By order dated November 5, 2015, the circuit court, applying Ohio law, ruled that respondent could recover reasonable attorney's fees and expenses.[3] In the final judgment order, entered June 21, 2016, the circuit court ruled that respondent could obtain pre-judgment interest on the attorney's fee and expenses award. Further, the court found that the pre-judgment interest began to run with the filing of Waybright's complaint against respondent.

It is from the circuit court's January 29, 2015, order denying petitioner's motion for summary judgment; the November 5, 2015, order awarding respondent attorney's fees and expenses related to its third-party claim for indemnity against petitioner; and the June 21, 2016, final judgment order that petitioner now appeals.

On appeal, petitioner raises five assignments of error. In its first three assignments of error, petitioner argues that the circuit court improperly awarded summary judgment to respondent on its indemnity claim. As these three assignments of error each relate to the propriety of the circuit court's ruling on a motion for summary judgment, we will address these assignments concurrently. This Court has long held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). *Accord* Syl. Pt. 1, *Blackrock Capital Investment Corporation and 52nd Street Advisors, LLC v. Fish, et al.*, ___ W. Va. ___, 799 S.E.2d. 520 (2017). Further, "[t]his Court reviews a circuit court's interpretation of a contract *de novo*." Syl. Pt. 2, *id.* In *Blackrock*, we described a de novo review as a "new, complete and unqualified review to the parties' arguments and the record before the circuit court." *Id.* at ___, 799 S.E.2d at 526.

We first note that the parties agree that the Crossing Agreement was unambiguous. Further, we note the parties concur that interpretation of Crossing Agreement was a task of the circuit court to complete and required the application of Ohio law. This is in accord with the precedent of this Court that establishes that "[i]n general, this State adheres to the conflicts of law doctrine of *lex loci delicti*." Syl. Pt. 1, *Paul v. Nat'l Life*, 177 W. Va. 427, 352 S.E.2d 550 (1986). Pursuant to this doctrine, "the substantive rights between the parties are determined by

---

[3]We note that the amount of attorney's fees and expenses incurred by respondent with respect to its indemnity claims against petitioner and the "reasonableness" of said fees and expenses are not in dispute. The record reflects that the parties agreed that the amount of such attorney's fees totaled $309,907.54 and expenses totaled $18,112.

the law of the place of injury." *McKinney v. Fairchild Intern., Inc.*, 199 W. Va. 718, 727, 487 S.E.2d 913, 922 (1997). Moreover, we note, "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state." Syl. Pt. 1, *Mich. Nat'l Bank v. Mattingly*, 158 W. Va. 621, 212 S.E.2d 754 (1975). Here, the contract between the parties was entered into in Ohio and related to a railroad crossing in Ohio. As such, we find that Ohio law applies.

In its first assignment of error, petitioner argues that the circuit court erred in concluding that paragraph 4.5 of the Crossing Agreement was inconsistent with paragraph 4.2 of the Crossing Agreement. Specifically, petitioner alleges the circuit court incorrectly found that because paragraph 4.5 was more specific in its parameters than paragraph 4.2, the duties imposed upon petitioner by paragraph 4.5 controlled, and required petitioner to keep the entire crossing free and clear from all obstructions at all times. Petitioner contends that paragraph 4.2, with its language requiring that respondent's employees' were required to repair certain areas of the track, per a collective bargaining agreement, was not limited in scope and applied to all maintenance, including ice and snow removal, which reportedly led to the February 1, 2009, derailment. Such a construction gives full effect to all of the Crossing Agreement's provisions in accord with Ohio law. *See Alts. Unlimited-Special, Inc., v. Ohio Dep't of Educ.*, 168 Ohio App. 3d 592, 602, 861 N.E.2d 163, 170-71 (2006).

We disagree and find that the circuit court committed no error in its interpretation of Crossing Agreement. Specifically, we adopt the circuit court's finding that paragraph 4.5 of the Crossing Agreement was more specific than paragraph 4.2, as it contained the express requirement that petitioner keep the crossing free from obstructions, at all times. *See Garofoli v. Whiskey Island Partners, Ltd.*, 2014 Ohio 5433, 25 N.E.3d 400 (Ohio Ct. App. 2014). Accordingly, we find no error in the circuit court's refusal of petitioner's motion for summary judgment on this issue.

Petitioner alleges, in its second assignment of error, that the circuit court's denial of petitioner's motion for summary judgment was improper, as there was a genuine issue of material fact as to how the word "maintenance" was defined in the Crossing Agreement. Petitioner contends that to accept respondent's broad characterization of the term maintenance to include "any interaction with the tracks whatsoever" would give no effect to paragraph 4.2 of the agreement. Respondent argues, and we agree, that the clear language of paragraph 4.5 of the Crossing Agreement requires that petitioner be responsible for keeping the crossing free from all obstructions, at all times. Further, we agree that petitioner's proposed construction would give no effect to paragraph 4.5 and lead to the absurd result of stripping petitioner from its duty to keep the crossing clear. Such a finding is in accord with Ohio precedent that "a court should give effect to every provision contained within a contract unless to do so results in absurdity." *Alts. Unlimited-Special, Inc*. We find no error in the circuit court's ruling.

In its third assignment of error, petitioner alleges that the circuit court erred in denying petitioner's motion for summary judgment because there was a genuine issue of material fact as to where on the track the derailment occurred. Petitioner argues that if derailment occurred outside the crossing, nothing in the Crossing Agreement would "remotely" suggest its possible liability. We need not address petitioner's argument on this issue, as the same is moot. It is

5

undisputed that the parties herein, prior to the start of trial, stipulated that the derailment occurred on this crossing, as defined in the Crossing Agreement. *See State ex rel. W. Va. Secondary School Activities Comm'n v. Oakley*, 152 W .Va. 533, 537, 164 S.E.2d 775, 778 (1968) (quoting Syllabus Point 1, *State ex rel Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)).

In his fourth assignment of error, petitioner contends that the circuit court erred in awarding attorney's fees to respondent for work related directly to pursuit of its third-party claim for indemnity against petitioner. We review an award of attorney's fees under an abuse of discretion standard. *See Sanson v. Brandywine Homes, Inc.*, 215 W. Va. 307, 599 S.E.2d 730 (2004). Further, we have noted that the decision to either award or not award attorney's fees "rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003).

Here, petitioner argues for the application of West Virginia law to this issue as "[i]n the absence of a statute, the law of the forum where suit is brought governs the remedy." Syl. Pt. 1, *Selected Kentucky Distillers v. Foloway*, 124 W. Va. 72, 73, 19 S.E.2d 94, 95 (1942). As a rule in West Virginia, "each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, in part, *Sally-Mike Props. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986). Petitioner argues that West Virginia limits the liability of the indemnitor to "the attorney fees and costs incurred by the indemnitee in the defense of the original action." *State ex rel. Vapor Corp. v. Narick*, 173 W. Va. 770, 775, 320 S.E.2d 345, 350 (1984). Thus, petitioner contends it is liable only for the payment of respondent's attorney's fees in defense of the claims of Mr. Wilkinson, not those incurred by respondent to enforce the indemnity provision in the Crossing Agreement. Based upon our review, we disagree.

Given that the Crossing Agreement was "made" and was to be performed in Ohio, and because the indemnity provision within the Crossing Agreement is a matter of substantive contractual interpretation, we find that Ohio law applies. *See Mattingly*, 158 W.Va. at 622, 212 S.E.2d at 756. Paragraph 14.2 of the Crossing Agreement expressly provides for the award of costs and expenses to those injured on the crossing at issue. Thus, construing, interpreting, and applying paragraph 14.2 is substantive a determination. Under Ohio law, when an indemnitor refuses to honor its obligation under a contract, the indemnitee may recover its legal expenses whether or not the contract explicitly allows for the recovery of attorney's fees. *See Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 241, 513 N.E.2d 253, 257 (1987). Further, Ohio law provides that when an indemnitor wrongfully fails in its duty to defend a legal action, this failure should not require the indemnitee to incur expenses that it cannot recover. *See Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 125, 443 N.E.2d 497, 500 (1982). Per paragraph, 14.2 of the Crossing Agreement petitioner agreed to indemnify respondent against personal losses resulting from petitoner's acts or omissions. Because petitioner's rejection of the tender necessitated respondent to incur legal expenses, the circuit court's award of attorney's fees to respondent was proper.

Petitioner further argues, in its final assignment of error that the circuit court erred in awarding pre-judgment interest on the award of attorney's fees to respondent. We have stated that "[p]rejudgment interest is a part of a plaintiff's damages awarded for ascertainable pecuniary

losses, and serves 'to fully compensate the injured party for the loss of the use of funds[.]" *Miller v. Fluharty*, 201 W. Va. 685, 700, 500 S.E.2d 310, 325 (1997). West Virginia Code § 56-6-31(a), provides, in part, that

> every judgment or decree for the payment of money, whether in an action sounding in tort, contract or otherwise, entered by any court of this state shall bear interest from the date thereof . . . *Provided*, That if the judgment or decree . . . is for special damages . . . or for liquated damages, the amount of special or liquidated damages shall bear interest at the rate in effect for the calendar year in which the right to bring the same shall have accrued . . . Special damages includes lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court.

Petitioner alleges that pre-judgment interest is not proper on attorney's fee awards as such expenses are not similar out-of-pocket expenditures and are unliquidated until the court awards them. *See Graham v. Nat'l Union Fire Ins. Co., of Pittsburgh, Pa.*, 556 F. Appx. 193, 198 (2014). Petitioner advocates an award of pre-judgment interest only on the attorney's fees awarded directly by the jury. Conversely, respondent argues that the circuit court's ruling regarding pre-judgment interest was proper as the underlying expenses were incurred as a direct result of the Crossing Agreement language permitting the recovery of costs and expenses. We agree with respondent and find that pursuant to West Virginia Code § 56-6-31(a) and the explicit terms of the Crossing Agreement, the circuit court did not abuse its discretion in awarding pre-judgment on the award of attorney's fees.

For the foregoing reasons, we affirm the circuit court's January 29, 2015, November 5, 2015, and June 21, 2016 orders.

Affirmed.

**ISSUED:** September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis

7