599 S.E.2d 730

**Lisa SANSON and Monica Sanson, Plaintiffs Below, Appellants**

v.

**BRANDYWINE HOMES, INC., a Domestic Corporation; Skyline Corporation, a Foreign Corporation; and Conseco Finance Corporation, a Foreign Corporation, Defendants Below, Appellees.**

No. 31269.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2004.

Decided March 2, 2004.

David L. Grubb, The Grubb Law Group, Charleston, for the Sansons.

John R. Teare, Jr., David E. Potters, Bowles Rice McDavid Graff & Love P.L.L.C., Charleston, for Skyline Corporation.

PER CURIAM:

The appellants, Lisa Sanson and Monica Sanson, appeal the August 15, 2002 order of the Circuit Court of Kanawha County which denied their motion to alter or amend the judgment entered on June 7, 2002, enforcing a settlement agreement reached with the appellee, Skyline Corporation. The Sansons contend that they did not authorize their attorney to settle their claim against Skyline, and, as a result, the settlement agreement cannot be enforced and the circuit court's order should be reversed. We find no error.

## I.

## FACTS

On December 15, 1999, Lisa and Monica Sanson, mother and daughter ("the Sansons"), contracted with Brandywine Homes, Inc. ("Brandywine") for the purchase, financing, and installation of a double-wide manufactured home which was constructed by Skyline Corporation ("Skyline"). The price of the manufactured home was $57,020.00. Of that amount, the Sansons paid Brandywine $25,000.00 down and were credited with $8,000.00 for a trade-in. The Sansons obtained a loan for the balance from Brandywine which was later assigned to Conseco Finance Corporation ("Conseco").[1]

During installation, a dispute arose between the Sansons and Brandywine regarding the number of blocks that would be used to set the home. In addition, the Sansons claimed that Brandywine's bulldozer operator damaged their property. Greg Lord, the attorney who represented the Sansons at the time,[2] directed Brandywine to temporarily discontinue installation. In its brief filed in this Court, Skyline represents that installation remains unfinished, and the Sansons have not yet occupied the home.

---

1. In its brief filed on appeal, Skyline relates that Conseco filed a voluntary bankruptcy petition with the United States Bankruptcy Court for the Northern District of Illinois on December 17, 2002, and, consequently, proceedings concerning Conseco are stayed pursuant to 11 U.S.C. § 362(a) and § 1301. The bankruptcy proceeding is of no consequence in this appeal, however, as the settlement agreement which the Sansons seek to set aside involves only Skyline.

2. The Sansons have had three different attorneys representing them at various times during the course of this litigation. Initially, they hired Greg Lord to represent them before the civil action was filed. Next, David White filed suit on their behalf and represented them until the time that he believed a settlement agreement was reached with Skyline. When David White withdrew as counsel, the Sansons hired their current counsel, David Grubb, to represent them.

The Sansons' original trial counsel, David White, filed a lawsuit against Brandywine, Skyline, and Conseco alleging fraud, breach of express and implied warranties, and breach of contract on June 26, 2000. The Sansons sought rescission of the sales contract, compensatory and punitive damages, and attorney's fees. Following limited discovery, in an effort to avoid incurring the additional costs of continued litigation, Skyline's counsel approached Mr. White with a settlement proposal. Mr. White stated that he would discuss the offer with his clients and subsequently called Skyline's counsel to report that the offer was accepted. At that time, Mr. White provided the details regarding the manner in which the settlement check should be handled.

Three months later, on October 12, 2001, Mr. White returned the settlement check to Skyline's counsel with a letter stating that:

My client has declined to accept said sum as settlement and has indicated that she did not authorize me to accept it on her behalf. Accordingly, I have advised Ms. Sanson to obtain other counsel and indicated to her that I intend to withdraw from further handling of this matter.

On November 27, 2001, Skyline filed a motion to enforce the settlement.

The circuit court held a hearing on the motion on April 24, 2002. In addition to the evidence and arguments presented at the hearing, the court asked Skyline to seek an affidavit from Mr. White regarding his authorization of the settlement. In his affidavit which was presented to the circuit court, Mr. White explained that he "contacted counsel for Skyline Corporation and informed counsel that Plaintiffs would accept Skyline's settlement proposal of $5,000.00, in exchange for execution of a release and dismissal of all claims against Skyline with prejudice." He further explained that the attorney client privilege had not been waived regarding this matter. However, he also stated that, "I have never, and would never, in any case, accept an offer without authorization from my client."

After reviewing the entire record and considering the arguments presented by counsel, the circuit court entered an order on June 7, 2002, which granted Skyline's motion to enforce the settlement and awarded attorney's fees and costs. On June 21, 2002, the Sansons filed a motion to alter or amend the judgment.[3] The circuit court entered its final order denying the motion on August 15, 2002. It is from this order that the Sansons appeal.

## II.

### STANDARD OF REVIEW

In Syllabus Point 1 of *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W.Va. 83, 543 S.E.2d 364 (2001), this Court held that:

" 'The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.' Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syllabus point 2, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999).

The underlying judgment upon which the motion to alter or amend judgment is based in this case is the circuit court's order enforcing the settlement between the Sansons and Skyline and awarding attorney's fees and costs to Skyline. We recently noted in *Burdette v. Burdette Realty Improvement, Inc.*, 214 W.Va. 448, 452, 590 S.E.2d 641, 645 (2003), that, "[T]his Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement." We also apply the abuse of discretion standard of review to an award of attorney's fees. *See Beto v. Stewart*, 213 W.Va. 355, 359, 582 S.E.2d 802, 806 (2003) ("The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal

---

**3.** West Virginia Rule of Civil Procedure 59(e) states that "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

except in cases of abuse."). With this standard in mind, we now consider the parties' arguments.

## III.

## DISCUSSION

On appeal, the Sansons contend that the circuit court erred by granting Skyline's motion to enforce the settlement agreement absent clear evidence of a meeting of the minds. The Sansons further assert that the court erred by refusing to conduct an evidentiary hearing to determine whether there was a meeting of the minds sufficient to enforce the settlement agreement and by granting Skyline's motion for an award of attorney's fees and costs without any evidence or allegation of bad faith.[4] Conversely, Skyline avers that the circuit court held a public hearing on the motion in open court and the record supports the court's factual determination that a settlement agreement was indeed reached by the parties.[5] As a result, says Skyline, the circuit court correctly concluded the Sansons agreed to settle their claims and later changed their minds which caused Skyline to incur fees and costs after the company fully performed its obligations under the agreement. Skyline contends that it should not have to bear this financial burden.

■■■ It is well-established that settlement agreements are contracts and therefore, "are to be construed 'as any other contract.'" *Burdette*, 214 W.Va. at 452, 590 S.E.2d at 645, *quoting Floyd v. Watson*, 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979). Likewise, "[i]t is well-understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement* § 7(1) (1967)." *O'Connor v. GCC Beverages, Inc.*, 182 W.Va.

689, 691, 391 S.E.2d 379, 381 (1990). As this Court observed in Syllabus Point 1 of *Burdette*, "'A meeting of the minds of the parties is a *sine qua non* of all contracts.' Syl. pt. 1, *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 (1932)."

■■■ Historically, this Court has enforced settlement agreements which were fairly made and which were not in violation of the law or public policy. As we explained in Syllabus Point 1 of *Moreland v. Suttmiller*, 183 W.Va. 621, 397 S.E.2d 910 (1990), "'[T]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy.' Syl. Pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968)." Consequently, "'[w]here parties have made a settlement ..., such settlement is conclusive upon the parties thereto as to the correctness thereof in the absence of accident, mistake or fraud in making the same.' Syllabus point 1, in part, *Calwell v. Caperton's Adm'rs*, 27 W.Va. 397 (1886)." Syllabus Point 7, *DeVane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999).

In this case, the circuit court determined that the parties "did, in fact, reach an enforceable agreement to settle the Plaintiff's claims against Skyline Corporation." Contrary to the Sansons' contention, the court held an evidentiary hearing on this matter on April 24, 2002. Although the Sansons did not provide testimony, their attorney proffered that they would testify that they did not authorize a settlement; that they told Mr. White they did not want to settle for the amount proposed by Skyline; and that Mr. White agreed to the settlement without their consent. Skyline waived its opportunity to cross-examine the Sansons, stating that it

---

4. In support of their argument, the Sansons rely upon *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535 (4th Cir.2002). While this Court sometimes considers and even adopts persuasive authority from other jurisdictions, we need not do so in this case because our own prior decisions resolve the issues raised herein.

5. Skyline bolsters its case by stating that no injustice exists in this case nor was public policy violated, especially in light of the fact that Skyline did not participate in the events which caused the appellants' dissatisfaction and Brandywine is still in the case for trial.

"fully anticipate[d] that the testimony would match ... the proffer." Thereafter, the circuit court expressed its concern regarding whether or not there was a "real meeting of the minds of the actual parties." The court then gave Skyline the opportunity to obtain an affidavit from Mr. White before ruling on the matter. Subsequent to the submission of Mr. White's affidavit, the circuit court ruled that the settlement agreement was enforceable.[6]

■ In light of the above, we find no merit to the Sansons' argument that the circuit court failed to hold an evidentiary hearing. While no actual testimony was presented, the court was certainly made aware of the Sansons' contention that no settlement was reached. In fact, the court stated that, "I'm going to accept that her testimony would be that she did not authorize [the settlement]." Having thoroughly reviewed the record, we find that the Sansons, as well as Skyline, were given sufficient opportunity to be heard before the court rendered its decision. Moreover, we believe the circuit court was fully aware of the circumstances under which the settlement was made.

■ We further find no error with regard to the circuit court's decision to enforce the settlement agreement. While this Court has recognized that "[t]he mere relation of attorney and client does not clothe the attorney with implied authority to compromise a claim of the client," Syllabus Point 5, *Dwight v. Hazlett*, 107 W.Va. 192, 147 S.E. 877 (1929), we have also held that "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." Syllabus Point 1, *Miranosky v. Parson*, 152 W.Va. 241, 161 S.E.2d 665 (1968).

■ As set forth above, the Sansons proffered testimony that they did not authorize their attorney, Mr. White, to settle their claim against Skyline. In response, Skyline submitted an affidavit from Mr. White. Af-

ter considering this evidence and the oral arguments of counsel, the circuit court concluded that an enforceable settlement agreement had been made by the parties. In reaching this decision, the court obviously found the evidence submitted by Skyline to be more credible. Based on our review of that evidence, as well as the entire record, we cannot say the court abused its discretion by enforcing the settlement agreement. *See Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) ("Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed." (citation omitted)).

■ Finally, we find no abuse of discretion with regard to the circuit court's decision to award attorney's fees and costs to Skyline. "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syllabus Point 2, *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). However, "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 3, *Sally–Mike Properties*.

■ In this case, Skyline fully performed its obligations by tendering the settlement agreement and release after it was notified that the Sansons accepted the settlement. Three months later, the Sansons returned the settlement check, claiming that no agreement had ever been reached. As a result, Skyline was forced to file the motion to enforce the settlement agreement. The circuit court concluded that Skyline should not have to bear the financial burden caused by the Sansons' attempt to rescind a valid and enforceable settlement agreement. We agree.

**6.** Skyline indicates in its brief that it also submitted a tape recording of Mr. White confirming the settlement.

Having determined that a valid settlement agreement was made, we do not believe the circuit court abused its discretion by ordering the Sansons to pay Skyline's attorney's fees and costs incurred to enforce the settlement.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on August 15, 2002, is affirmed.