# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 22-ICA-330

_____

FILED

June 11, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

CIT BANK, N.A.,
Plaintiff/Counterclaim Defendant Below, Petitioner,

v.

CAROLINE COFFMAN, as Administratrix
of the ESTATE OF SHIRLEY BOWEN,
Defendant/Counterclaim Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Hampshire County
Honorable C. Carter Williams, Judge
Civil Action No. CC-14-2016-C-97

AFFIRMED, IN PART, REVERSED, IN PART, VACATED, IN PART,
AND REMANDED WITH DIRECTIONS
_____

Submitted:  April 2, 2024
Filed:  June 11, 2024

Marc E. Williams, Esq.
Randall L. Saunders, Esq.
Shaina D. Massie, Esq.
Jonah D. Samples, Esq.
Nelson Mullins Riley & Scarborough
LLP
Huntington, West Virginia
Counsel for Petitioner

Jonathan G. Brill, Esq.
Jonathan G. Brill, PLLC
Romney, West Virginia

F. Samuel Byrer, Esq.
Law Office of F. Samuel Byrer, PLLC
Charles Town, West Virginia
Counsel for Respondent

JUDGE LORENSEN delivered the Opinion of the Court.

LORENSEN, JUDGE:

Petitioner, CIT Bank, N.A. ("CIT"), appeals, in part, the May 6, 2022, order of the Circuit Court of Hampshire County denying CIT's motion for a new trial and motion for judgment as a matter of law. CIT also appeals a November 18, 2022, order granting punitive damages and a November 22, 2022, order awarding attorney fees. Respondent Estate of Shirley Bowen ("Ms. Bowen") asserts a cross-assignment of error regarding the circuit court's reduction of punitive damages in the November 18, 2022, order. A jury found CIT liable for (1) wrongful foreclosure; (2) slander of title; (3) breach of contract; (4) violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"); (5) abuse of process; (6) tort of outrage; and (7) fraudulent court record. Ms. Bowen was awarded $760,000.00 in compensatory damages for her various claims and was additionally awarded $1,500,000.00 in punitive damages. Following the post-trial motions presently on appeal, the circuit court reduced Ms. Bowen's total damages to $1,750,000.00 and separately awarded Ms. Bowen $613,858.35 in attorney fees and costs.

For the reasons below, we affirm the circuit court's ruling on Ms. Bowen's breach of contract and tort of outrage claims. However, we reverse the circuit court's holdings on the claims for wrongful foreclosure, slander of title, abuse of process, and fraudulent court record. We further reverse the circuit court's order regarding punitive damages and vacate the order awarding attorney fees. This matter is remanded to the circuit court for a reconsideration of attorney fees.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Shirley Bowen purchased her home in Delray, West Virginia, in 1988. Faced with financial insecurity, she entered into a reverse mortgage arrangement with Financial Freedom Senior Funding Corporation, now CIT, in 2006. Almost ten years after entering into the reverse mortgage, Ms. Bowen learned that CIT had foreclosed and sold her home. She alleged that she received no notice of the foreclosure and was not aware of why CIT would foreclose.[1] Shortly thereafter, CIT filed a Petition to Rescind Foreclosure Sale in the Circuit Court of Hampshire County, which began the action on appeal.

A reverse mortgage provides regular and reliable income to a homeowner in exchange for his or her forfeiture of equity in the property. The purpose of a reverse mortgage is to enable older homeowners to access equity in their homes. *See* W. Va. Code § 47-24-2 (1996). The terms of Ms. Bowen's reverse mortgage required her to "occupy, establish, and use the Property as Borrower's principal residence after execution of this Security Instrument." Though she certified her occupancy for the first four years of the reverse mortgage, Ms. Bowen stopped submitting her written occupancy certifications in December of 2012.

---

[1] On February 11, 2019, the Estate of Shirley Bowen filed its suggestion of death. Shortly thereafter, Caroline Coffman, Ms. Bowen's daughter, was substituted for Shirley Bowen as a party to the action, in her capacity as Administratrix of the Estate of Shirley Bowen.

On July 2, 2012, Ms. Bowen personally called CIT and requested that her mailing address be changed from her former Post Office Box ("P.O. Box") to the property's physical address at 1207 Delray Road due to increased P.O. Box fees. On January 7, 2013, Ms. Bowen completed an occupancy certification form, which listed her daughter, Caroline Coffman, as her alternative contact. Also on that form was a section that stated, "[i]f this information is no longer correct, please provide a current alternative contact below." In this section, Ms. Bowen left the "Name" space blank but listed the 1207 Delray Road address in the "Address" space.

On March 29, 2013, Ms. Bowen again submitted a Change of Mailing Address form, requesting that CIT change Ms. Bowen's mailing address from her former P.O. Box to 1207 Delray Road. The form contained a section titled "Reason for Change (Required)" which Ms. Bowen left blank. CIT received the Change of Mailing Address form and marked it invalid for its failure to include a reason for the change. Thereafter, CIT sent Ms. Bowen a letter to the 1207 Delray Road address that stated that CIT had recently sent mail correspondence to Ms. Bowen that was returned by the postal service with a forwarding address for Ms. Bowen. The letter stated that CIT could only send notices to Ms. Bowen at the property address or any other address that Ms. Bowen designates and, therefore, CIT cannot forward notices to Ms. Bowen to an address which she has not authorized.[2] The letter contained another Change of Mailing Address form that listed the

_____

[2] CIT mailed requests to certify occupancy to Ms. Bowen on December 15, 2013, January 3, 2014, and February 15, 2014, all to her former P.O. Box. On May 9, 2014, CIT

3

1207 Delray Road address as the forwarding address provided by the United States Postal Service. CIT never entered a change of address into its internal system for Ms. Bowen and as a result, sent all correspondence to Ms. Bowen's discontinued P.O. Box, as well as to a physical address for Ms. Bowen's home listed on the deed of trust.[3]

On July 29, 2015, CIT sent a "Home Equity Conversion Mortgage Repayment Notice" to Ms. Bowen's former P.O. Box. The notice asserted that Ms. Bowen's loan had become due and payable because of her alleged failure to occupy the property. On November 2, 2015, CIT sent Ms. Bowen by regular mail a "Notice of Intent to Foreclose" to her former P.O. Box. The notice stated that Ms. Bowen's loan was in default due to her failure to occupy her home.

On February 18, 2016, CIT foreclosed on Ms. Bowen's home. CIT then purchased the property at the sale for $116,000.00 and conveyed title to the property to Federal National Mortgage Association. Ms. Bowen first became aware of the foreclosure and conveyance a little less than a month later when she discovered a written notice on her front door stating that her home had been sold. On March 10, 2016, Ms. Bowen's daughter,

_____

sent Ms. Bowen a notice of delinquent property taxes for tax year 2013 to her former P.O. Box, which was returned as undeliverable. Thereafter, on June 12, 2014, CIT sent Ms. Bowen a notice for nonpayment of property taxes, which included a request for CIT to be repaid for paying the property taxes. Again, the letter was returned as undeliverable.

[3] The address on the deed of trust is listed as "Rt. 29, Mountain View SD, Tract 2, Augusta, WV 26704." CIT does not argue that this address could be utilized to send correspondence to Ms. Bowen at the property's address recognized by the post office.

Ms. Coffman, called CIT on her mother's behalf. She informed CIT that her mother still lived at the property and that she changed her address due to a new 911 physical address policy, as well as Ms. Bowen's inability to afford her long-discontinued P.O. Box. On March 15, 2016, Ms. Bowen sent CIT a letter that stated that she was 79 years old, still resided in her home, had not left for any reason, and wished to stay there for the remainder of her life. Along with the letter, Ms. Bowen sent CIT a copy of her driver's license and an electric bill, both of which reflected the 1207 Delray Road address.

It was revealed during discovery that Ms. Bowen did, in fact, certify her occupancy on multiple occasions. The loan notes revealed as follows:

1) On March 22, 2014, Ms. Bowen called Financial Freedom and confirmed she continued to reside in her home.

2) On March 26, 2014, Ms. Bowen provided Financial Freedom with written confirmation that she continued to reside in her home.

3) On March 28, 2014, and in response to Ms. Bowen's prior phone call and written correspondence, Financial Freedom notes its confirmation that Ms. Bowen continued to reside in her home.

4) On April 2, 2015, Financial Freedom received an occupancy inspection noting that Ms. Bowen continued to reside in her home, which was verified by Ms. Bowen's neighbor.

5) On May 14, 2015, Financial Freedom confirmed that Ms. Bowen's home was occupied.

6) On May 22, 2015, Ms. Bowen sent Financial Freedom a handwritten letter providing, "To whom it may concern, I Shirley M. Bowen still live in my home."

7) On August 28, 2015, Financial Freedom received an appraisal from Scott See noting that the home was occupied by Ms. Bowen.

8) On September 22, 2015, Financial Freedom ordered an occupancy inspection and received notification from the inspector that provided, "Property occupied per contact with the mortgagor."

9) On January 7, 2016, Financial Freedom received another appraisal from Scott See noting that Ms. Bowen was residing in her home.

CIT also claimed early in this litigation, in addition to occupancy, Ms. Bowen had failed to provide a reason for changing her mailing address. However, the loan notes proved that assertion to be false. The reverse mortgage loan documents provide that notice "shall be given to the Property address or any other address all Borrowers jointly designate." None of the loan documents required Ms. Bowen to provide a reason for a change in address.[4]

On March 25, 2016, CIT submitted a request to the United States Department of Housing and Urban Development ("HUD") to rescind the foreclosure sale. HUD's approval was required by the structure of the reverse mortgage, which involved two deeds of trust, one held by HUD and one by CIT.

On March 31, 2016, Ms. Bowen sent a handwritten letter to CIT simply requesting a change of mailing address to reflect the 1207 Delray Road address. On April 12, 2016, CIT denied the request and sent Ms. Bowen a letter that stated that her change of address had not been accepted because the address provided was missing information. The

---

[4] The record reflects that Ms. Bowen did in fact provide a reason for the change.

letter requested Ms. Bowen resubmit a preprinted change of address form that provided a reason for the change. CIT mailed this letter to Ms. Bowen's former P.O. Box. On June 13, 2016, CIT mailed Ms. Bowen another letter to her former P.O. Box explaining, among other things, that it could not process the requested change of address without a stated reason for the change. On June 24, 2016, Ms. Bowen's March 31, 2016, handwritten request for an address change was approved after Ms. Coffman called CIT and informed them that the reason for the change of address was due to the new 911 addressing project. CIT then finally updated Ms. Bowen's mailing address in CIT's system as the 1207 Delray Road address.

On December 6, 2016, CIT filed a Petition to Rescind Foreclosure Sale. The petition listed Ms. Bowen's residence as Rt. 29, Mountain View Road, Tract 2, Augusta, West Virginia 26704 and her mailing address as her long-discontinued P.O. Box. The petition asserted that "[t]he Borrower defaulted upon the terms and conditions of the Note and Deed of Trust." The petition does not specify CIT's basis for recission. CIT failed to personally serve Ms. Bowen with the petition. On April 12, 2017, CIT moved for default judgment against Ms. Bowen. On June 19, 2017, the circuit court ordered CIT Bank to personally serve Ms. Bowen. After being served, Ms. Bowen retained counsel, responded to the motion for default, and filed an answer and the counterclaims that are at issue in this case. In her September 28, 2018, First Amended Answer to Petition and Counterclaims, Ms. Bowen stated that she suffered from progressive Alzheimer's disease. She also asserted claims for: (1) wrongful foreclosure; (2) slander of title; (3) violation of the West

7

Virginia Consumer Credit Protection Act; (4) breach of contract, covenant of good faith and fair dealing; (5) tort of outrage; and (6) abuse of process.

On June 27, 2019, the pre-trial hearing was held. Ms. Bowen appeared for the hearing, but CIT did not. Following the hearing, on July 1, 2019, the circuit court entered an order that granted a motion to compel discovery sought by Ms. Bowen on February 19, 2019. The circuit court noted that CIT filed no objection or response to the motion to compel. The court also ordered the parties to file pre-trial memoranda by August 5, 2019.[5]

The matter proceeded to a jury trial on June 14, 2021. The jury found in favor of Ms. Bowen on every claim and awarded $200,000.00 for wrongful foreclosure; $10,000.00 for slander of title; $20,000.00 for breach of contract; $10,000.00 for violating the consumer protection act;[6] $10,000.00 for abuse of process; $500,000.00 for tort of outrage/emotional distress; $10,000.00 for fraudulent record; and $1,500,000.00 in punitive damages. On August 13, 2021, the circuit court entered its Judgment Order Following Jury Trial that memorialized the jury's verdict.

---

[5] Ms. Bowen filed several motions for contempt and sanctions against CIT throughout the litigation.

[6] Following the November 8, 2021, hearing, the circuit court vacated the jury's award of damages for the violation of the consumer protection act on the basis that such a claim did not survive the death of Ms. Bowen. This holding was not appealed.

8

On August 27, 2021, Ms. Bowen moved the circuit court to conduct a post-trial review of the punitive damages award pursuant to *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991) and *Perrine v. E.I. du Pont de Nemours and Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010). On the same date, Ms. Bowen moved the court for an award of attorney fees and costs.

In its November 18, 2022, order, the circuit court held that the punitive damage award was duplicative of the damages awarded for the tort of outrage and reduced the punitive damage award by $500,000.00, the amount the jury awarded Ms. Bowen for the tort of outrage claim. Shortly thereafter, the circuit court issued an order granting Ms. Bowen attorney fees and costs, totaling $613,858.35.

On December 22, 2022, CIT appealed: (1) the May 6, 2022, order denying CIT's motion for new trial, and granting in part and denying in part CIT's motion for judgment as a matter of law; (2) the November 18, 2022, order following post-trial review of punitive damages; and (3) the November 22, 2022, order granting Ms. Bowen's motion for attorney fees.[7]

---

[7] On February 10, 2023, this Court issued a scheduling order which granted CIT's motion for the notice of appeal to be considered timely, in part. The scheduling order directed the parties to address whether the issues resolved by the circuit court orders entered prior to November 18, 2022, were preserved for appeal. We address those jurisdictional concerns below.

## II.    STANDARDS OF REVIEW

The parties' arguments require the application of different standards of review. First, as it relates to the circuit court's order denying CIT's renewed motion for judgment as a matter of law, we apply the following standard of review:

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

*WesBanco Bank, Inc. v. Ellifritz*, 248 W. Va. 600, 606, 889 S.E.2d 682, 688 (2023).

Second, when jurisdictional questions arise or are otherwise apparent, an appellate court has a responsibility to review its jurisdiction *sua sponte*. *See Moten v. Stump*, 220 W. Va. 652, 655, 648 S.E.2d 639, 642 (2007). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *In re H.W.*, 247 W. Va. 109, 114, 875 S.E.2d 247, 252 (2022) (quotation omitted).

Third, we apply a *de novo* standard of review to the punitive damages award. *Quicken Loans, Inc. v. Brown*, 236 W. Va. 12, 34, 777 S.E.2d 581, 603 (2014).

Fourth, we apply the following standard of review for the admission of evidence under Rule 404(b):

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W. Va. 294, 310-311, 470 S.E.2d 613, 629-630 (1996).

Lastly, we apply an abuse of discretion standard when reviewing the lower court's award of attorney fees. *See Sanson v. Brandywine Homes, Inc.*, 215 W. Va. 307, 310, 599 S.E.2d 730, 733 (2004).

## III.    DISCUSSION

### A. Jurisdiction Over Appeal of May 6, 2022, Order

As a court of limited jurisdiction, this Court has a "responsibility *sua sponte* to examine the basis of [our] own jurisdiction." *James M.B. v. Carolyn M.*, 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995). In recognition of this responsibility, this Court directed the parties to submit briefs on whether the May 6, 2022, order was preserved for appeal.[8] CIT argues that the rule of finality confers jurisdiction over the May 6, 2022, order. Ms.

---

[8] The Notice of Appeal in this matter was filed on December 22, 2022.

11

Bowen contends that the May 6, 2022, order was untimely appealed and that this Court does not have jurisdiction to review it.

The West Virginia Appellate Reorganization Act vests this Court with jurisdiction over final judgments issued by West Virginia circuit courts. *See* W. Va. Code § 51-11-4 (2022). The statute expressly limits our jurisdiction to "*[f]inal* judgments or orders of a circuit court in civil cases, entered after June 30, 2022." *Id.* (emphasis added). Our Supreme Court of Appeals has held that "[t]he usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case." *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995) (citation omitted). The requirement of finality is "mandatory and jurisdictional." *James M.B.,* 193 W. Va. at 292, 456 S.E.2d at 19. The "'rule of finality' is designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate litigation[.]'" *National Union Fire Insurance Company of Pittsburgh, PA v. Westlake Chemical Corp.*, 900 S.E.2d 1, 6 (W. Va. 2024) (citations omitted).

Generally, "[a] case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *Id.* at 7. However, an appellate court may take a permissive appeal of an order that addresses liability, but not damages. Our Supreme Court of Appeals has recognized such an exception against appealing an order that imposes liability only when "the determination of damages can be characterized as ministerial." *Id.*

12

at 8. That is, a judgment which determines liability is final and appealable when the "computation of damages is mechanical and unlikely to produce a second appeal[.]" *Id.* Accordingly, "an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as ministerial." *Id.*

In the instant case, the circuit court entered three orders following the jury trial pertinent to this appeal. The first was entered on May 6, 2022. That order denied CIT's motion for a new trial, granted CIT's motion for judgment as a matter of law regarding the WVCCPA claims, and denied CIT's motion for judgment as a matter of law on all remaining claims.[9] Had the order been final, the deadline to file a Notice of Appeal on that order would have been June 6, 2022, with a perfection date of September 6, 2022. Importantly, the circuit court held in that order that punitive damages would be addressed following a post-trial hearing in accordance with *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010) (simplifying the factors in *Garnes v. Fleming Landfill, Inc.*, Syl. Pts. 3-4, 186 W. Va. 656, 413 S.E.2d 897 (1991)).

Before a trial or appellate court reviews an award of punitive damages for excessiveness in accordance with *Garnes*, the court must determine whether the amount of

---

[9] The circuit court granted CIT's motion for judgment as a matter of law regarding Ms. Bowen's WVCCPA claims, holding that her claims did not survive her death. Ms. Bowen's estate did not appeal this holding.

13

the punitive damages award is justified by aggravating evidence including, but not limited to:

> (1) the reprehensibility of the defendant's conduct; (2) whether the defendant profited from the wrongful conduct; (3) the financial position of the defendant; (4) the appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed; and (5) the cost of litigation to the plaintiff.

*Perrine*, at Syl Pt. 7.

The reviewing court must then consider whether mitigating evidence permits a reduction in punitive damages:

> (1) whether the punitive damages bear a reasonable relationship to the harm that is likely to occur and/or has occurred as a result of the defendant's conduct; (2) whether punitive damages bear a reasonable relationship to compensatory damages; (3) the cost of litigation to the defendant; (4) any criminal sanctions imposed on the defendant for his conduct; (5) any other civil actions against the same defendant based upon the same conduct; (6) relevant information that was not available to the jury because it was unduly prejudicial to the defendant; and (7) additional relevant evidence.

*Id.*

Our Supreme Court further held that a punitive damages award may require "downward adjustment" by the circuit court due to the jury's lack of relevant information provided at trial, such as criminal sanctions imposed or similar pending lawsuits elsewhere against the defendant. *Perrine,* 225 W. Va. at 553, 694 S.E.2d at 886.

14

On November 18, 2022, the circuit court entered its order analyzing the *Perrine* factors.[10] Given the likelihood that a punitive damage award will be changed following a *Perrine* analysis, we conclude that a punitive damage award is not ministerial in nature.[11] Accordingly, the May 6, 2022, order was not immediately appealable and did not become final until the circuit court entered its November 18, 2022, order analyzing the *Perrine* factors. Therefore, this Court has jurisdiction over the May 6, 2022, order.

## B. Wrongful Foreclosure

Ms. Bowen argues that the circuit court properly adopted "wrongful foreclosure" as a new cause of action in West Virginia. She argues that without a wrongful

---

[10] The appeal from the November 18, 2022, order was deemed timely by this Court by order entered February 10, 2023.

[11] Ms. Bowen also argues that Rule 72 of the *West Virginia Rules of Civil Procedure* is also dispositive here. Rule 72 states: "The time for filing an appeal commences to run and is to be computed from the entry of any of the following orders: Granting or denying a motion for judgment under Rule 50(b); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion were granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or *granting or denying a motion for a new trial under Rule 59*." W. Va. R. Civ. P. 72 (emphasis added).

We find that the specific facts of this case do not fall within any of the "rare" exceptions to the rule of finality contemplated in *Vaughan v. Greater Huntington Park and Recreation Dist.*, 223 W. Va. 583, 588 n.10, 678 S.E.2d 316, 321 n.10 (2009) (explaining that some exceptions to the rule of finality include writs of prohibition, certified questions, and judgments made pursuant to Rule 54(b)). Orders entered pursuant to Rule 72 *may* comport with the rule of finality, but the rule itself is not dispositive without a separate analysis on whether the Rule 72 order is considered final.

foreclosure claim, Ms. Bowen would be left without a remedy for CIT's wrongful acts.[12] CIT argues that Ms. Bowen's claims for wrongful foreclosure and breach of contract are duplicative, and that the circuit court erred when it permitted Ms. Bowen to present a wrongful foreclosure claim to the jury.

The Supreme Court of Appeals of West Virginia has not recognized a tort of wrongful foreclosure as a cause of action in this state. Two decades ago, our highest Court stated that an important consideration as to whether a new cause of action should be recognized is whether "a sufficient remedy already exists for the conduct at issue." *Hannah v. Heeter*, 213 W. Va. 704, 710, 584 S.E.2d 560, 566 (2003). Our Supreme Court has also cautioned that: "[a] line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden." *Crum v. Equity Inns Inc.*, 224 W. Va. 246, 258, 685 S.E.2d 219, 231 (2009). Our Supreme Court has been increasingly wary when addressing arguments that urge the adoption of new causes of action. *See Fields v. Mellinger*, 244 W. Va. 126, 135, 851 S.E.2d 789, 798 (2020) (holding that "[e]ven though this court is empowered to grant relief not expressly provided by the legislature, and may

---

[12] The tort of wrongful foreclosure has been recognized by twenty-eight states. *See* 123 Am. Jur. 3d *Proof of Facts* § 417 (Originally published in 2011).

16

grant relief by creating a new remedy, we shall refrain from doing so where other statutory provisions and administrative procedures provide meaningful remedies").

We find that a sufficient remedy exists for the conduct at issue in the breach of contract and tort of outrage claims, so we believe that the adoption of a newly minted cause of action is not warranted. Ms. Bowen's recovery for breach of contract was predicated upon the allegation that CIT breached their contract by foreclosing on her home without sufficient cause under the agreement. Both the conduct and evidence that provided a basis for Ms. Bowen's wrongful foreclosure claim are identical to the conduct and evidence underlying the breach of contract.[13] To the extent that the foreclosure of Ms. Bowen's home was "wrongful" as found by the jury, it was wrongful pursuant to the parties' contract.[14] Thus, we conclude that Ms. Bowen had a sufficient remedy under general contract law principles, without the creation of wrongful foreclosure as a new cause of action. Accordingly, we find that the circuit court erred when it denied CIT's renewed motion for judgment as a matter of law on this issue.

---

[13] The circuit court held that Ms. Bowen can maintain both causes of action because the jury "made separate findings" and awarded "different damages;" however, it is the jury's purpose to make factual findings, not determine questions of law. "It is the role of the trial judge to determine, interpret, and apply the law applicable to a case." *France v. S. Equip. Co.*, 225 W. Va. 1, 15, 689 S.E.2d 1, 15 (2010).

[14] Our Legislature has provided a statutory remedy for rescinding a foreclosure sale, which provides that "no action or proceeding to set aside a trustee's sale due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed shall be filed or commenced more than one year from the date of the sale." W. Va. Code § 38-1-4a.

## C. Gist of the Action

Having found that wrongful foreclosure is not a cognizable cause of action in West Virginia, we turn to CIT's next argument. CIT argues that the gist of the action doctrine bars Ms. Bowen's claims for slander of title, abuse of process, and fraudulent court record arising out of her breach of contract claim.

The gist of the action doctrine generally precludes a plaintiff from recovering additional tort claims arising out of a breach of contract claim. "Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." *Gaddy Eng'n Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 586, 746 S.E.2d 568, 577 (2013). The gist of the action doctrine prevents a breach of contract claim being pled as a tort claim. *See Maher v. Camp 4 Condo. Ass'n, Inc.*, 249 W. Va. 433, ___, 895 S.E.2d 836, 844 (Ct. App. 2023) (citation omitted). Under this doctrine, recovery in tort will be barred when the following factors are demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Id.*

18

Whether a special relationship exists between the parties is also relevant as to whether the gist of the action doctrine applies:

> Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law *because of the relationship of the parties,* rather than a mere omission to perform a contract obligation. An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract.

*Lockhart v. Airco Heating & Cooling, Inc.*, 211 W. Va. 609, 614, 567 S.E.2d 619, 624 (2002) (citation omitted) (emphasis added); *see also Aikens v Debow*, 208 W. Va. 486, 499, 541 S.E.2d 576, 589 (2000).

Generally, a borrower-servicer relationship does not amount to a special relationship. *See Aikens*, 208 W. Va. at 493, 541 S.E.2d at 583; *see also U.S. Bank NA v. Tara Retail Grp. LLC et al. (In re Tara Retail Grp. LLC)*, 634 B.R. 509, 521 (Bankr. N.D.W. Va. 2021); *Carter v. Nat'l City Mortg., Inc.*, No. 1:14CV70, 2015 WL 966260, at *8 (N.D.W. Va. Mar. 4, 2015); *Warden v. PHH Mortg. Corp.*, No. 3:10-CV-75, 2010 WL 3720128, at *9 (N.D.W. Va. Sep. 16, 2010). A special relationship between borrower and servicer may be found when the borrower "is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered." *Glascock v. City Nat. Bank of W. Va.*, 213 W. Va. 61, 66, 576 S.E.2d 540, 545 (2002). "[W]here the lender and borrower have a 'special relationship' that extends beyond the contract, the borrower may recover tort-type damages." *White v.*

*AAMG Const. Lending Center*, 226 W. Va. 339, 346, 700 S.E.2d 791, 798 (2010). The circuit court must evaluate whether a special relationship exists on a case-by-case basis. *See Glascock*, 213 W. Va. at 67, 576 S.E.2d at 546.

The bulk of Ms. Bowen's counterclaims fall expressly within the class of claims precluded by the gist of the action doctrine. Ms. Bowen's claims for slander of title, abuse of process, and fraudulent court record arose solely from the contractual relationship and CIT's breach. The circuit court found in its May 6, 2022, order that "to the extent that a special relationship is required here (which this Court doubts), the evidence submitted and the factual findings of the jury were sufficient to find that such existed." Despite this assertion, the circuit court provided no explanation for why a special relationship was or was not necessary to preclude the application of the gist of the action doctrine, nor did it provide an explanation on how it found that a special relationship between CIT and Ms. Bowen existed. The record reflects that there were no special facts pled or otherwise argued that would create a special relationship for these torts that would provide independent grounds to survive the gist of the action doctrine. Accordingly, the circuit court erred when it denied CIT's renewed motion for judgment as a matter of law on slander of title, abuse of process, and fraudulent court record because these claims were precluded by the gist of the action doctrine.[15]

---

[15] CIT argues that Ms. Bowen's claim for fraudulent court record was not properly pled below. We decline to address this argument due to our holding above.

20

**D. Tort of Outrage**

Next, we address whether Ms. Bowen's tort of outrage claim survives the gist of the action doctrine. To determine whether a tort can coexist with a contract claim, the court must examine the parties' obligations under the contract. *See Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 555, 814 S.E.2d 205, 218 (2018) (holding that the gist of the action did not bar plaintiff's claims because the majority shareholders still owed a fiduciary duty to the minority shareholders regardless the shareholder agreement). In sum, this Court must decide whether Ms. Bowen's tort of outrage claim can stand alone notwithstanding the contractual relationship between the parties. *See Maher v. Camp 4 Condo. Ass'n Inc.*, 249 W. Va. 433, ___, 895 S.E.2d 836, 844-845 (Ct. App. 2023). Upon review of the record, CIT's bad acts prior to and during litigation clearly violated an independent duty to Ms. Bowen outside of their contract. Therefore, we conclude that the circuit court did not err when it denied CIT's motion for judgment as a matter of law on Ms. Bowen's tort of outrage claim, as it relates to the gist of the action doctrine.

Recovery under the tort of outrage is permitted when "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . and if bodily harm to the other results from it, for such bodily harm." *Harless v. First Nat'l Bank*, 169 W. Va. 673, 703, 289 S.E.2d 692, 693 (1982). To be successful on a tort of outrage claim, it must be shown:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

21

> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Laboratories, Inc.*, 202 W. Va. 369, 375, 504 S.E.2d 419, 425 (1998). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.* at 378, 504 S.E.2d at 428. As the trier of fact, a jury takes "into account changing social conditions and plaintiff's own susceptibility [to determine] whether the particular conduct was sufficient to constitute extreme outrage." *Id.* "Whether a defendant has acted intentionally or recklessly in inflicting emotional distress is usually a question of fact for the jury." *Id.*

The record is clear that CIT had actual knowledge that Ms. Bowen occupied her home, and without a sincere effort to provide effective notice, foreclosed and sold her home. Months after its mistake was made, CIT filed a recission petition that falsely alleged that Ms. Bowen had defaulted on the terms of her mortgage. CIT again failed to serve Ms. Bowen the petition at the proper address that she had repeatedly provided CIT and proceeded to move for a default judgment. Moreover, contrary to CIT's arguments, there was no evidence presented to the jury that the terms of Ms. Bowen's reverse mortgage or any applicable legal regulation required her to give a reason for her address change. CIT failed to explain to the jury what would cause a business concern catering to elderly clients

22

to repeatedly fail in a basic undertaking to update its own business records in a reasonable effort to avoid unnecessary conflict or confusion.

We have taken into consideration the extensive record below reflecting CIT's total failure to accommodate and consider an elderly woman who did nothing to injure CIT and, as discussed separately below, evidence of CIT's overall plan to unwind an unprofitable reverse mortgage line of business by engaging in hardball tactics dealing with vulnerable people. We conclude that the circuit court did not abuse its discretion when it found that CIT's actions were reasonably considered outrageous and allowed the tort of outrage claim to be considered by the jury. The jury determined that CIT's actions were outrageous and intentional, and we find no factual or legal basis to disturb that finding.

We also decline to disturb the jury's finding that Ms. Bowen satisfied the third and fourth elements of *Travis*. To successfully satisfy the third element, a plaintiff must show that the defendant's actions caused the plaintiff to suffer severe emotional distress. *Id.* at 379, 504 S.E.2d at 429. The causation element is satisfied upon a showing that there is a "logical sequence of cause and effect" between the defendant's actions and the plaintiff's emotional distress. *Id*. Our Supreme Court held in *Travis* that:

> A determination by the trial court as to whether a plaintiff has presented sufficient evidence, absent expert testimony, such that the jury from its own experience can evaluate the claim, its causal connection to the defendant's conduct and the damages flowing therefrom will not be disturbed unless it is an abuse of discretion.

*Id.* (citation omitted).

The circuit court properly found that Ms. Bowen presented sufficient evidence of causation to send it to the jury. The evidence presented at trial showed that CIT's actions were directly targeted at Ms. Bowen and that her ongoing battle with CIT throughout the remainder of her life caused her emotional distress. Accordingly, we find no error.

Finally, the plaintiff must show the emotional distress "was so severe that no reasonable person could be expected to endure it." *Id.* at 380, 504 S.E.2d at 430. Emotional distress that rises to this high bar may include: "mental suffering and anguish, shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* Moreover, "[t]he reasonableness of the plaintiff's reaction will normally be a jury question." *Id.* The intensity and duration of the emotional distress is also a question for the jury. *Id.*

The jury determined that Ms. Bowen was entitled to damages due to the suffering she endured, and we again decline to disturb that finding. Ms. Bowen's daughter testified at trial that the foreclosure of her mother's home "really devastated her. It broke her, something broke, when she thought she was losing her house." Ms. Bowen was an elderly woman who faced financial uncertainty and sought the benefits of a reverse

mortgage to remain in her home. Accordingly, we find that CIT's actions were sufficient to entitle the jury to award Ms. Bowen damages for the tort of outrage.

### E. Punitive Damages

In her cross-assignment of error, Ms. Bowen argues that the lower court erred when it reduced the punitive damages award by the $500,000.00 awarded for the tort of outrage. In support of the reduction, CIT argues that the circuit court did not err because Ms. Bowen failed to present evidence that she sought medical treatment or accrued actual expenses for her emotional distress. Simultaneously, CIT asks this Court to eliminate the entire punitive damages award.

Our Supreme Court has been hesitant to allow an award of punitive damages when damages for the tort of outrage have already been awarded. *See Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 111, 130, 506 S.E.2d 554, 573 (1997).[16] The decision to allow a punitive damages award is not automatic, but when the conduct is "wanton, willful or malicious" punitive damages may be appropriate. *Id.* Our Supreme Court has also cautioned that when a jury assesses the amount of damages, "emotional distress damages may assume the cloak of punitive damages," particularly in cases where the emotional distress does not cause physical trauma. *Id.*

---

[16] We note that our Supreme Court uses the tort of outrage and intentional infliction of emotional distress interchangeably.

25

Without proof of physical trauma, or any concomitant proof of medical or psychiatric emotional or mental trauma, a plaintiff may not recover damages through the tort of outrage and collect a punitive damages award. *Id.* On this issue the Court has explained that:

> [when] the plaintiff fails to exhibit either a serious physical or mental condition requiring medical treatment, psychiatric treatment, counseling or the like, any damages awarded by the jury for intentional infliction of emotional distress under these circumstances necessarily encompass punitive damages and, therefore, an additional award for punitive damages would constitute an impermissible double recovery.

*Id.* at 131-132, 506 S.E.2d at 574-575.

However, there is an avenue in which plaintiffs can collect for emotional distress and punitive damages. The Supreme Court explained in *Tudor* that the jury must be presented with "some quantifiable measure of compensatory damages sustained from the intentional infliction of emotional distress so that it is clear that those damages are not duplicative punitive damages." *Id.* at 132, 506 S.E.2d at 575.

At trial, Ms. Bowen failed to present evidence that her emotional distress caused her physical trauma. Accordingly, the punitive damages award is duplicative of the damages awarded in connection with the tort of outrage. Thus, we find that the circuit court

26

should have stricken the entire punitive damages award pursuant to *Tudor* and West Virginia Code § 55-7-29 (2015).[17]

### F. Prior Bad Acts

CIT argues that the circuit court erred in admitting a settlement agreement and evidence of CIT's financial position for the purposes of determining liability because it violated West Virginia Rule of Evidence 404(b)(1) ("Evidence of a crime, wrong, or other act is [generally] not admissible to prove a . . . person acted in accordance with the character."). However, the evidence of a crime, wrong, or other act is admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, or lack of accident. *See* W. Va. R. Evid. 404(b)(2).

Ms. Bowen offered evidence of a settlement between Financial Freedom, a subsidiary acquired by CIT, and HUD. In that settlement, Financial Freedom agreed to pay the United States $89 million in repayment of insurance funds it had unlawfully received from the government for foreclosing on reverse mortgages. Michael Scales, a foreclosure expert, and David Epperly, a forensic accountant, were also permitted to testify about the settlement and CIT's financial losses as a result of CIT's reverse mortgage portfolio. Ms.

---

[17] The Code states, in relevant part: "[t]he amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater." W. Va. Code § 55-7-29(c) (2015).

Bowen sought to introduce this evidence to show that CIT intended to exit the reverse mortgage market and was acting in furtherance of a plan to minimize its losses in doing so. She argued that CIT's nationwide foreclosure rates and conduct regarding reverse mortgages fit squarely within evidence permitted under Rule 404(b)(2).

A circuit court must utilize the three-step analysis set forth in *State v. Combs*, 247 W. Va. 1, 7, 875 S.E.2d 139, 145 (2022), when determining whether evidence is admissible under 404(b)(2). Our Supreme Court has explained that:

> First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the 'other acts' evidence is more probative than prejudicial under Rule 403.

*Id.* When requested, the trial court should give the jury a limiting instruction on the specific purpose for which the evidence is being offered. *Id.* at 11, 875 S.E.2d at 149; *see also State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986); *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 471, 419 S.E.2d 870, 884 (1992).

Ms. Bowen asserts that CIT has waived its argument regarding the 404(b) evidence because CIT failed to offer a limiting instruction or otherwise object to Ms.

Bowen's proffered instruction.[18] In response, CIT argues that it did offer a limiting instruction, Instruction Number 28, titled "Punitive Damages Unavailable." CIT offered this instruction, which stated that the jury was not to consider any evidence regarding CIT's net worth, in the event that the circuit court found that the jury should not consider punitive damages.

"[T]he trial court is under no obligation to give a limiting instruction unless one is requested." *McGinnis*, 193 W. Va. at 156, 455 S.E.2d at 525 (citation omitted). However, this Court may, on appeal, consider the possible prejudice of the absence of a limiting instruction ensuing from the erroneous admission of Rule 404(b) evidence. *Id.* at 157, 455 S.E.2d at 526. In balancing the risk of prejudice, we are unable to find that CIT was unduly prejudiced by the absence of a limiting instruction. A review of CIT's limiting instruction indicates it was not offered for the purpose of the 404(b) evidence at issue. Instruction No. 28 does not address the Financial Freedom settlement or how testimony regarding the settlement should be limited. Moreover, neither the circuit court nor Ms.

---

[18] Ms. Bowen additionally argues that the invited error doctrine prevents CIT from arguing against the introduction of the 404(b) evidence because CIT introduced the same evidence of which it now complains. CIT argues that because the evidence was offered in rebuttal of Ms. Bowen's allegedly improper evidence, then the invited error doctrine does not apply. The invited error doctrine "is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error." *State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996). CIT does not cite any authority, nor can this Court find any, that offering evidence in rebuttal is relevant to the consideration of whether the invited error doctrine applies. This is especially true when no objection was made to the initial introduction of the evidence. Accordingly, we conclude that the invited error doctrine applies.

29

Bowen were required to offer a limiting instruction for the evidence to be properly admitted. Accordingly, we find that the circuit court did not abuse its discretion when it admitted the 404(b) evidence.

### G. Attorney Fees

CIT argues that the circuit court erred when it awarded Ms. Bowen attorney fees because there is no evidence that CIT acted with bad faith, vexatiously, wantonly, or for oppressive reasons. Ms. Bowen argues that CIT's actions before and during litigation clearly justified an award of attorney fees.

Generally, "each litigant bears his or her own attorney fees absent express statutory, regulatory, or contractual authority for reimbursement." *Daily Gazette Co. v. Canady*, 175 W. Va. 249, 250, 332 S.E.2d 262, 263 (1985) (citation omitted). However, "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 49, 365 S.E.2d 246, 247 (1986). "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers." *Daily Gazette Co.*, 175 W. Va. at 251, 332 S.E.2d 264 (citation omitted). Moreover, "[t]he decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed

30

on appeal except in cases of abuse." *Boyd v. Goffoli*, 216 W. Va. 552, 569, 608 S.E.2d 169, 186 (2004) (citation omitted).

Upon review of the facts below, we are unable to find that the circuit court abused its discretion when it found that CIT acted in bad faith, vexatiously, wantonly, or for oppressive reasons. The circuit court's order describes the discovery issues that were in large part due to CIT's lack of cooperation throughout the proceedings.[19] CIT failed to appear for the final pre-trial conference, failed to provide certain documents during discovery, and delayed providing essential loan documents relevant to Ms. Bowen's claims. Accordingly, we affirm the circuit court's November 22, 2022, order granting attorney fees. Below, Ms. Bowen was awarded 33% of the overall judgment of $1,750,000.00, totaling $613,858.35 in attorney fees and costs. Due to our foregoing holdings reducing Ms. Bowen's recoverable damages, we hereby vacate and remand to the circuit court solely to readdress the method of calculation and amount of Ms. Bowen's attorney fees to be paid by CIT consistent with the circuit court's discretion and West Virginia law.

---

[19] CIT was represented by a different law firm. CIT's current counsel was substituted to represent CIT prior to trial.

## IV. CONCLUSION

For the foregoing reasons, the May 6, 2022, order of the Circuit Court of Hampshire County denying CIT's renewed motion for judgment as a matter of law is affirmed, in part, and reversed, in part. The November 18, 2022, order on punitive damages is affirmed, in part. The November 22, 2022, order granting Ms. Bowen attorney fees and costs is vacated and remanded with directions for the circuit court to recalculate attorney fees consistent with this opinion.

Affirmed, in part; Reversed, in part; Vacated, in part; and Remanded with directions.

32